**Nancy KESSLING, Appellant**

v.

**FRIENDSWOOD INDEPENDENT SCHOOL DISTRICT and Patricia Hanks, Appellees.**

**No. 14–07–01063–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 3, 2009.

---

Jason Ray, Jennifer S. Riggs, Austin, TX, for appellants.

Jeffrey L. Rogers, Clay T. Grover, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

## OPINION

ADELE HEDGES, Chief Justice.

Nancy Kessling sued appellees, Friendswood Independent School District ("F.I.S.D.") and its superintendent, Patricia Hanks, for various alleged violations of the Texas Open Meetings Act ("TOMA"), Texas Public Information Act ("TPIA"), and Texas Education Code. In two issues on appeal, Kessling contends that the trial court erred in (1) granting summary judgment against her TOMA and TPIA claims, and (2) dismissing her Education Code claims for want of jurisdiction. In a cross-

appeal, appellees/cross-appellants contend that the trial court erred in not awarding them attorney's fees. We affirm in part and reverse and remand in part.

## I. Background

Kessling styles herself as a "public watchdog," having followed the actions of the F.I.S.D. school board for over twenty years and "routinely" using TPIA requests to monitor its activities. Kessling asserts that she lives in the area served by F.I.S.D., that she pays taxes to F.I.S.D., and that her children attended F.I.S.D. schools. On August 9, 2006, she filed the present lawsuit, seeking injunctions and declarations concerning alleged violations of the TOMA, TPIA, and Education Code. Kessling's original petition named only superintendent Hanks as a defendant; FISD was added by later amended petition. Specifically, in her third amended petition, the live petition at the time of judgment,[1] Kessling alleged that appellees violated the TOMA by (1) deliberating illegally after adjournment, (2) failing to post proper notice of topics to be considered in executive sessions, (3) discussing matters not on the agenda in executive sessions, (4) permitting employees to attend executive sessions, and (5) failing to keep proper minutes and electronic recordings of meetings. She further alleged that appellees violated the TPIA by refusing to either provide certain requested information or request an attorney general's opinion, which would authorize such refusal, and by untimely or otherwise inappropriately fulfilling other requests. She also alleged that appellees violated the Education Code by failing to follow certain accounting practices and procedures and file certain related reports required under the code. Kessling sought declaratory judgment regarding the alleged violations and requested mandamus and injunctive relief regarding certain past violations and to prevent certain of the violations from reoccurring.

In response to Kessling's original petition, styled "Plaintiff's Original Application for Writ of Mandamus and Petition for Permanent Injunction," Hanks answered, making general and special denials of the allegations, raising various affirmative defenses, and requesting attorney's fees under the Education Code for the filing of a frivolous lawsuit. Hanks also filed special exceptions, claiming that in the petition, Kessling failed to (1) give fair notice of the claims asserted, (2) demonstrate standing regarding certain claims, (3) identify specific acts claimed to be violations or that Kessling was seeking to enjoin, and (4) state a cause of action.[2] Although Kessling filed several supplemental petitions, the trial court granted the special exceptions and ordered Kessling to replead within 30 days to cure the pleading defects.

After Kessling filed a first amended petition, which, *inter alia,* added F.I.S.D. as a defendant, and then a second amended petition, appellees filed a combined motion for summary judgment and plea to the jurisdiction. In the summary judgment portion of this pleading, appellees contend-

---

1. Kessling filed her third amended petition after appellees' motion for summary judgment was filed and after the deadline passed for amendment. The trial court expressly granted leave to file the third amended petition during an oral hearing before final judgment was entered. The third amended petition was therefore the live petition at the time of judgment.

2. In her special exceptions, Hanks provided eleven paragraphs of detailed exceptions, challenging specific paragraphs of Kessling's petition. The description in the text above is intended solely as a brief synopsis of the assertions.

ed that Kessling's TOMA and TPIA claims were moot as they related to actions in the past and requested an impermissible advisory opinion as they related to actions in the future. In regards to the TPIA claims, appellees additionally argued that Kessling failed to follow the proper procedures for bringing an action for declaratory judgment or injunctive relief under that act: specifically that she should have filed a complaint with the district or county attorney for Galveston County, where F.I.S.D. is located. In the plea to the jurisdiction portion of appellees' pleading, appellees asserted that the trial court did not have jurisdiction over Kessling's Education Code claims because appellees had governmental immunity with regard to such claims. Appellees further argued that Kessling lacked standing to raise the Education Code claims because the code did not provide for a right of private action and because Kessling failed to allege an injury which was distinct to her as opposed to effecting the general public.

In her response to the motion and the plea, Kessling maintained that her TOMA claims were not rendered moot by the fact that alleged violations had occurred in the past and that it was thus not improper for a court to declare that prior actions violated the TOMA. She further argued that her allegations established a "pattern and practice" of TOMA violations; thus, mandamus and injunctive relief would be appropriate to prevent future violations. Regarding her TPIA claims, Kessling asserted that according to established caselaw, the TPIA permits private citizens to bring direct action against governmental bodies to enforce TPIA provisions. With regard to appellees' plea to the jurisdiction, Kessling asserted that she had standing and the trial court had jurisdiction

over her claims because members of the public have a right to seek (1) mandamus relief to compel a public official to perform a ministerial duty, and (2) declaratory relief against state officials who act without legal or statutory authority. She argued that the duties at issue in her Education Code claims, namely compliance with certain statutory accounting policies and procedures, were ministerial acts requiring no discretion, and thus, governmental immunity was not applicable. She further contended that permitting F.I.S.D. to avoid its Education Code accounting duties would effectively stymie public monitoring of its financial activities because under the TPIA, a government entity cannot be required to create documents but can be required only to produce documents it has already created. As discussed above, with the trial court's permission, Kessling subsequently filed her third amended petition.

The trial court granted the motion for summary judgment and plea to the jurisdiction without specifying the bases therefor. Appellees then moved for attorney's fees. The trial court thereafter filed another order, again stating that the summary judgment motion and jurisdictional plea were granted and that all of Kessling's claims were dismissed with prejudice. Although the order does not mention appellees' motion for fees, the trial court expressly denied that motion during an oral hearing.

## II. Kessling's Issues

As stated, in two issues, Kessling contends that the trial court erred in granting summary judgment against her TOMA and TPIA claims and in dismissing her Education Code claims for want of jurisdiction.

## A. Summary Judgment [3]

In her first issue, Kessling contends that the trial court erred in granting summary judgment against her TOMA and TPIA claims. She asserts that the trial court's legal conclusions were in error and that genuine issues of material fact exist precluding summary judgment. We analyze the grant of a traditional motion for summary judgment under well-established standards of review. See generally Tex.R. Civ. P. 166a; Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548–49 (Tex. 1985). The movant bears the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). We review the motion and any evidence de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.2005).

### 1. TOMA Claims

The Texas Legislature enacted the TOMA in 1967 to ensure "that the public has the opportunity to be informed concerning the transactions of public business." Acker v. Tex. Water Comm'n, 790 S.W.2d 299, 300 (Tex.1990) (quoting Act of May 23, 1967, 60th Leg., R.S., ch. 271, § 7, 1967 Tex. Gen. Laws 597, 598). Under the TOMA, all meetings of governmental bodies must be kept open to the public unless the law expressly authorizes a closed session. See Tex. Gov't Code. § 551.002. The TOMA contains provisions governing how and when notices of meetings are to be posted and what the contents of those notices must be. See id. §§ 551.041–.043,

551.045, 551.047, 551.051–.052. The TOMA additionally imposes certain requirements unique to closed sessions, including that a certified agenda or electronic recording must be kept and that any vote or final action must occur in an open meeting. See id. §§ 551.102–.103. Government Code section 551.142(a) provides that "[a]n interested person ... may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of [TOMA] by members of a governmental body." As explained above, in the present action, Kessling seeks a declaration concerning appellees' alleged prior TOMA violations and a mandamus or injunction barring similar violations in the future.

█ In their motion for summary judgment, appellees argued that Kessling's TOMA claims were moot to the extent that they related to meetings in the past and requested an impermissible advisory opinion to the extent that they related to future meetings. Both arguments essentially question whether Kessling has raised a justiciable controversy. The first argument asserts that claims concerning past meetings are moot, and the latter argument questions whether claims concerning future meetings have ripened. "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex.1995). Whether a justiciable controversy exists, and thus whether claims have become moot on the one hand and whether they have ripened on the other, is a threshold question that implicates subject-matter jurisdiction. See, e.g.,

3. For consistency's sake, we adopt the parties' labeling of the TOMA and TPIA discussions as pertaining to the grant of summary judgment and their labeling of the Education Code discussion as pertaining to the grant of the plea to the jurisdiction. Such labeling is not intended to substantively impact the analysis.

Patterson v. Planned Parenthood of Houston & Se. Tex., Inc., 971 S.W.2d 439, 442 (Tex.1998) (discussing ripeness); *City of Houston v. Clark*, 252 S.W.3d 561, 568 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (discussing mootness). "A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). The doctrine of ripeness "asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patterson*, 971 S.W.2d at 442.

Appellees base their justiciability arguments on the Austin Court of Appeals' analysis in *Cornyn v. City of Garland*, 994 S.W.2d 258 (Tex.App.-Austin 1999, no pet.). In *Cornyn*, the trial court denied by way of summary judgment the complainant's requests for a declaratory judgment that prior city counsel meeting notices were deficient and a permanent injunction and writ of mandamus requiring full TOMA compliance in the future. 994 S.W.2d at 266. The Austin court affirmed, holding that the declaratory judgment claim was moot and that the request for injunction and for writ of mandamus required an advisory opinion (*i.e.*, was not yet ripe for decision). *Id.* at 267.[4] Other courts, however, including this one, have arrived at different conclusions from those of the *Cornyn* court regarding the mootness of prior TOMA violations and the ripeness of threatened future violations.

### a. Future Meetings

■ For reasons which will become apparent, we begin by addressing the claims concerning threatened future violations. In *Harris County Emergency Service District No. 1 v. Harris County Emergency Corps.*, we upheld an injunction preventing the appellant governmental entity from holding certain types of meetings in the future without proper notice. 999 S.W.2d 163, 171 (Tex.App.-Houston [14th Dist.] 1999, no pet.). As authority, we cited section 551.142(a), which authorizes "[a]n interested person ... [to] bring an action by mandamus or injunction to stop, prevent, or reverse a violation *or threatened violation* of the TOMA." *Id.* (quoting 551.142(a)) (emphasis added). We looked to a pattern of past improper meeting notices to support an injunction against holding future meetings without proper notice.

■ To avoid the justiciability challenges, Kessling is only required to plead sufficient facts to support jurisdiction. *See City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex.2008). Kessling's pleadings are sufficient to make a claim under *Harris County Emergency* in that she explicitly alleged a pattern and practice of certain kinds of TOMA violations and requested injunctive and mandamus relief to prevent future violations of the same nature. Consequently, the trial court erred in granting summary judgment against Kessling's claims concerning future meeting notices.[5]

---

4. Regarding past acts, the Austin Court also rejected the complainant's assertion of an exception to the mootness doctrine, which would permit judicial review of acts that are capable of repetition but evade review. *Id.* (quoting 551.142(a)); *see also Williams v. Lara*, 52 S.W.3d 171, 184–85 (Tex.2001) (discussing the "capable of repetition, yet evading review" exception to the mootness doctrine).

This mootness exception is not raised in the present appeal.

5. Appellees are misguided in their attempt to discredit any precedential value of *Harris County Emergency* based on factual and procedural distinctions between that case and the one currently before us.

### b. Past Meetings

▇ We now turn to Kessling's claims with regards to past violations. In *City of Farmers Branch v. Ramos*, 235 S.W.3d 462 (Tex.App.-Dallas 2007, no pet.), the Dallas Court of Appeals also deviated from the *Cornyn* court's conclusions. In *Ramos*, the complainant alleged that the city council had violated the TOMA on specific instances when it passed certain ordinances, and the city countered that questions concerning such alleged violations were rendered moot because the ordinances in question had been subsequently repealed. 235 S.W.3d at 468–69. The court of appeals rejected the city's position, stating that: "If a governmental body illegally deliberates and decides an issue in closed session, repealing the action so that it can be retaken in a later setting does not vindicate the very right protected by TOMA.... 'Our citizens are entitled to more than a result. They are entitled not only to know what government decides but to observe how and why every decision is reached.'" *Id.* at 469–70 (quoting *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex.1990)). The court then concluded that the complainant's request for a declaration of TOMA violations, coupled with a potential remedy involving production of certified agenda from the illegally closed meetings, established that the issue was not moot. *Id.* at 470.

▇ We agree with the *Ramos* court that a TOMA violation is not rendered moot simply because it occurred in the past but remains a live controversy insofar as it supports a future remedy. Kessling's claims of past TOMA violations and threatened future violations are, in fact, inextricably intertwined. The remedy that she requests based on past violations is the prohibition (by mandamus or injunction) of future violations. She attempts to prove the likelihood of those future violations by demonstrating a pattern and practice of violations in the past. Thus, following *Harris County Emergency* and *Ramos,* the controversy regarding past violations has not become moot, and the controversy regarding future violations is ripe. Consequently, the trial court erred in granting summary judgment against Kessling's TOMA claims on these bases. We sustain Kessling's first issue. It is important to note, however, that our resolution of this issue does not mean that Kessling ultimately has valid TOMA claims or that she has demonstrated a pattern and practice of TOMA violations. These questions were not raised by appellees' motion. We hold only that Kessling has sufficiently pleaded her TOMA claims.

### 2. TPIA Claims

In 1973, the Texas Legislature passed what is now known as the TPIA. *See* Act of June 14, 1973, 63rd Leg., R.S., ch. 424, §§ 1, 14(d), 1973 Tex. Gen. Laws 1112, 1118; *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 355 (Tex.2000). The purpose of the TPIA is "to provide public access 'at all times to complete information about the affairs of government and the official acts of public officials and employees.'" *City of Garland*, 22 S.W.3d at 355–56 (quoting Tex. Gov't Code § 552.001). In furtherance of this policy, a governmental body must promptly produce requested public information. *See* Tex. Gov't Code § 552.221. The TPIA defines "public information" as information that "under a law or ordinance or in connection with the transaction of official business, is collected, assembled, or maintained by a governmental body; or for a governmental body and the governmental body owns the information or has a right of access to it." *Id.* § 552.021. The TPIA also exempts certain categories of information from disclosure. *See id.* §§ 552.101–.123. In order to claim

that particular information falls within an exemption, when the issue has not been previously determined, a governmental body must request an Attorney General's opinion on the matter. *See id.* § 552.301. If the governmental body fails to do so, the information is presumed to be public. *Id.* § 552.302.

As stated above, in her petition, Kessling alleged that appellees had violated the TPIA by refusing to either provide particular information or request an attorney general's opinion on the matter. She further charged that appellees had failed to timely or properly provide other requested information. As relief, Kessling requested a declaratory judgment that appellees had violated the TPIA, as well as injunctive relief and a writ of mandamus requiring appellees to comply with TPIA provisions and timely disclose the requested information. In their motion, appellees raised two grounds for summary judgment on Kessling's TPIA claims. First, they argued that under TPIA section 552.3215, Kessling was not permitted to file her claims seeking declaratory judgment and injunctive relief directly with a court but first had to file a complaint with the local district attorney or county attorney. Tex. Gov't Code § 552.3215. Second, appellees argued, again based on the *Cornyn* case, that Kessling's TPIA claims regarding past requests had all become moot and that her claims regarding potential future requests sought an impermissible advisory opinion. We will address each ground in turn.

### a. Section 552.3215

 As a matter of statutory interpretation, we consider the question of whether section 552.3215 prevents Kessling from filing her declaratory judgment and injunctive claims directly with a court under a de novo standard. *City of Rockwall v.*

*Hughes,* 246 S.W.3d 621, 625 (Tex.2008). When a statute's language is clear and unambiguous, we need not resort to rules of construction or other extrinsic aids. *Id.* at 626. In enacting TPIA section 552.3215, the Texas Legislature established a scheme through which TPIA complainants can file a complaint with a district attorney or county attorney, who then must assess whether a violation has occurred and determine whether to pursue the matter by first notifying the governmental entity and, if not remedied, then filing an action for declaratory judgment or injunctive relief. Tex. Gov't Code § 552.3215. Subsection (a)(1) defines a "[c]omplainant" as "a person who claims to be the victim of a violation of [the TPIA]." *Id.* § 552.3215(a)(1). Subsection (b) states that "[a]n action for a declaratory judgment or injunctive relief may be brought in accordance with this section against a governmental body that violates [the TPIA]." *Id.* § 552.3215(b). Subsection (c) permits a district or county attorney to bring the action in the name of the state, and subsection (e) states that a "complainant may file a complaint" with the county or district attorney. *Id.* § 552.3215(c), (e). Other sections guide the district or county attorney's decision-making process, require notification to the governmental entity before suit can be filed, and provide complainants with an additional opportunity to seek redress with the Texas Attorney General should the local district or county attorney decline to pursue the matter. *Id.* § 552.3215(g), (h), (i), (j).

 Most significantly for our purposes, the final subsection of the provision, subsection (k), states that "[a]n action authorized by this section is in addition to any other civil, administrative, or criminal action provided by this chapter or another law." *Id.* § 552.3215(k). Prior to enactment of section 552.3215, it was clear that

TPIA requestors could seek relief from a governmental entity's refusal to produce information by directly filing a declaratory judgment action under the UDJA against the entity. *See City of Garland*, 22 S.W.3d at 357–58 (collecting cases where TPIA requestors have sued for declaratory judgment as the sole remedy, as well as cases where requestors sought declaratory judgment in addition to mandamus relief, and holding that the UDJA supports declaratory judgment actions in the TPIA context); *Dominguez v. Gilbert*, 48 S.W.3d 789, 796 (Tex.App.-Austin 2001, no pet.) (holding TPIA requestor had standing to seek declaratory judgment under the UDJA). Appellees argue that the enactment of section 552.3215 eliminated this previously available avenue for redress. However, given that nothing in section 552.3215 expressly or implicitly restricts the preexisting right of action, and given that subsection (k) expressly states that an action authorized therein is "in addition to" any other type of action available, we hold that section 552.3215 does not prevent a complainant from directly filing a TPIA declaratory judgment claim.[6] In effect, section 552.3215 gives a complainant an avenue for seeking redress which does not require the complainant to incur the expense of filing a lawsuit on his or her own behalf: a lawsuit undertaken by, and in the name of, the state. *See* Tex. Gov't Code § 552.3215(c). Nothing in section 552.3215 suggests that a complainant cannot file a lawsuit in his or her own behalf, name, and expense. The trial court erred to the extent it held otherwise.[7]

### b. Justiciability

Next, we turn to appellees' justiciability contentions, *i.e.*, that Kessling's TPIA claims regarding past requests had all become moot and that her claims regarding potential future requests were not yet ripe. As discussed above, "[t]o constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank*, 907 S.W.2d at 467. A case is considered moot when either a controversy has ceased to exist or the parties lack a legally cognizable interest, *Hallman*, 159 S.W.3d at 642, and a controversy does not ripen until an injury has occurred or is likely to occur, *Patterson*, 971 S.W.2d at 442. We begin by noting that Kessling's TPIA violation claims can be grouped into two categories: (1) claims that certain requests have gone unfulfilled, and (2) claims that although other requests have been fulfilled, something improper occurred regarding how they were fulfilled.[8]

---

6. There is, additionally, no indication in the legislative history, cited by appellees or discovered by our research, that section 552.3215 was intended to replace or extinguish any existing rights of action. To the contrary, the legislative history is replete with comments akin to subsection (k), *i.e.*, that the newly created action is in addition to any other available actions.

7. We additionally note that even if appellees were correct in their interpretation of section 552.3215, the section would still not have been grounds for dismissing all of Kessling's TPIA claims. Kessling additionally sought a writ of mandamus, which is expressly permit-

ted under TPIA section 552.321 when a governmental entity refuses to request an attorney general's opinion or to produce material previously determined to be public information. Tex. Gov't Code § 552.321.

8. Among her claims that certain TPIA requests have gone unfulfilled, Kessling asserts that (1) on November 17, 2003, she requested documents relating to September, October, and November board meetings, but she did not receive coded payroll statements; (2) she has not received all of the check registers that she requested on November 17, 2003; (3) FISD has failed to respond to a February 23, 2005, request for "Payment of Bills" and "Fi-

Claims that certain requests have gone unfulfilled are neither moot nor unripe. Because there is a live controversy regarding these claims, the trial court possesses subject matter jurisdiction to resolve the controversy. *See Patterson*, 971 S.W.2d at 442. Although in their appellate briefing, appellees further argue that (1) Kessling requested an overbroad order, (2) Kessling failed to plead her claims with sufficient specificity, and (3) FISD has not refused to provide any existing documents and cannot be required to create documents to fulfill TPIA requests, appellees did not raise these points as grounds for summary judgment below. Accordingly, we cannot affirm the judgment on these bases. *See Knott*, 128 S.W.3d at 216. Summary judgment was improvidently granted with regard to Kessling's claims of unfulfilled TPIA requests.

Regarding her claims concerning requests that were ultimately fulfilled, Kessling does not argue in her briefing to this court that she is entitled to seek mandamus or injunctive relief, as she did in connection with her TOMA claims, instructing appellees to follow the law in the future. She neither argues that TPIA allows for such relief nor seeks any other injunctive or other affirmative relief as her requests have been fulfilled. Instead, with regard to her fulfilled requests, she appears to seek only a declaration that violations have occurred in the past in connection with those requests. In the absence of a request for injunctive or other affirmative relief, a declaration that past violations have occurred would have no impact on the rights of the parties. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex.1993) (citing *McKie v. Bullock*, 491 S.W.2d 659, 660 (Tex.1973), for the proposition that "when the action sought to be enjoined is accomplished and 'suitable coercive relief' becomes impossible, it is improper to grant declaratory relief"); *City of Shoreacres v. Tex. Comm'n of Envtl. Quality*, 166 S.W.3d 825, 838–39 (Tex.App.-Austin 2005, no pet.) (holding that party's request for declaratory judgment did not change the fact that no justiciable controversy existed because the court could grant no relief having a practical legal effect on the controversy). Kessling's claims regarding fulfilled TPIA requests are therefore moot. Consequently, the trial court did not err in dismissing these claims.[9]

nancial Reports"; (4) FISD has failed to provide a "list of educators" she requested on November 14, 2005; and (5) FISD failed to provide a signature authority card for a bank account, also requested on November 14, 2005. Among her claims regarding requests which were ultimately fulfilled, Kessling asserts that FISD (1) failed to provide "prompt access" to board agenda and meeting minutes as well as banking documents she requested on February 28, 2004; (2) treated her differently than district employees and members of the press by not providing her "without charge and without request" a board agenda book; (3) failed to make certain bank statements available until Kessling made a second request; (4) admitted that "Tax Collector Bank Statements" had been omitted from the response to a prior request; (5) produced "Quarterly Investment Reports" untimely;

and (6) failed to produce requested "Letters to Management," which Kessling subsequently obtained from another source.

9. Obviously, we disagree with the dissent's conclusion that Kessling briefed the issue of whether the TPIA affords her the right to seek mandamus or injunctive relief instructing appellees to follow the TPIA in the future. Even if her briefing could be liberally construed as having raised the issue, she certainly does not offer any argument or authority specifically on this issue. *See* Tex.R. Civ. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authority and to the record.").

For these reasons, we also disagree with the dissent's additional conclusion that the trial court erred in granting summary judgment

In short, the trial court erred in dismissing Kessling's TOMA claims as well as her TPIA claims regarding requests that have allegedly gone unfulfilled, but the court has not been shown to have erred in dismissing Kessling's TPIA claims concerning requests which were ultimately fulfilled. Accordingly, we sustain Kessling's first issue in part and overrule it in part.

## B. Plea to Jurisdiction

■ In her second issue, Kessling contends that the trial court erred in granting appellees' plea to the jurisdiction and, thus, in dismissing her Education Code claims for want of jurisdiction. We review a trial court's grant of a plea to the jurisdiction under a de novo standard. *Lopez*, 259 S.W.3d at 150. The focus of such review is on "whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court." *Id.* In making this determination, we construe pleadings liberally in favor of the plaintiff. *Id.* Furthermore, we may not assess the merit of the plaintiff's claims. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If a fact question regarding jurisdiction exists, the plea should not have been granted; however, if pleadings or evidence affirmatively negate a jurisdictional fact, the plea may have been properly granted even in the absence of an opportunity to amend. *See Lopez*, 259 S.W.3d at 150. When a plea to the jurisdiction challenges the plaintiff's pleadings

and not the existence of jurisdictional facts, we assume the facts pleaded to be true. *See Westbrook v. Penley*, 231 S.W.3d 389, 405 (Tex.2007).

In her petition, Kessling claimed that appellees violated the Education Code by failing to follow certain accounting practices and failing to generate certain reports required under the code and associated administrative rules. *See* Tex. Educ. Code §§ 39.023, 44.002, 44.003, 44.007, 44.0071; 19 Tex. Admin. Code § 61.1025 (2001, 2005) (Tex. Educ. Agency, Public Education Information Management System Data and Reporting), 109.1 (1996, 2002) (Tex. Educ. Agency, Financial Accounting). Kessling requested a declaratory judgment and injunctive and mandamus relief to require appellees to adopt an appropriate accounting system which conforms to the Education Code requirements. She further claimed that appellees' failure to generate required accounting reports defeated her TPIA requests for such reports because, under the TPIA, a governmental body can be required to release only information in existence and cannot be forced to create the requested information. *See A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 676 (Tex.1995). In their plea, appellees asserted governmental immunity. They also asserted that Kessling lacked standing because (1) the Education Code does not provide for a private right of action on these account-

against Kessling's claims regarding fulfilled TPIA requests. The dissent appears to reach its conclusion based on the majority's analysis of Kessling's similar TOMA claims. However, it is far from clear whether the TPIA and interpretive case law supports the dissent's conclusion that this issue should be analyzed the same as it is under the TOMA. We express no opinion as to whether a mandamus or injunction requiring appellees to follow the TPIA in the future would be proper under the law had such issue been briefed.

The dissent suggests that we are addressing the merits of Kessling's claims regarding fulfilled TPIA requests. To the contrary, as explained in the preceding text, we find that those claims are moot and thus the trial court, and this court, lacks subject-matter jurisdiction over those claims. *See, e.g., Labrado v. County of El Paso*, 132 S.W.3d 581, 589 (Tex.App.-El Paso 2004, no pet.).

ing matters, and (2) Kessling failed to allege a distinct injury.

■ We begin by addressing the standing grounds in the plea to the jurisdiction. A party seeking affirmative relief must have standing to invoke a court's subject matter jurisdiction. *Daimler-Chrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex.2008). "For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical." *Id.* at 304–05. If the plaintiff does not allege real and personal injury to himself or herself, it is irrelevant whether the defendant acted improperly. *See id.* at 305.

Appellees are correct, and Kessling does not dispute, that the Education Code does not contain any provision authorizing a private right of action for complaints concerning a school district's failure to follow required accounting practices or generate required financial reports. To the contrary, the provisions Kessling relies upon give oversight on these matters to other governmental actors. *See* Tex. Educ.Code §§ 39.023 (Commissioner of Education), 44.002 (State Board of Education), 44.003 (district superintendents), 44.007 (State Board), 44.0071 (Commissioner); 19 Tex. Admin. Code § 61.1025 (Commissioner and groups appointed by the Commissioner),

109.1 (Commissioner, State Board, and state auditor).[10]

■ Kessling instead argues that she has standing to compel, through mandamus, a public official to perform a ministerial duty. *See Blum v. Lanier*, 997 S.W.2d 259, 263 (Tex.1999).[11] She further contends that she has standing to "seek declaratory relief against state officials who allegedly act without legal or statutory authority." *See Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). Such arguments, however, do not obviate the prerequisite for standing of a particularized injury. *See Inman*, 252 S.W.3d at 304–05. Indeed, the Texas Supreme Court has expressly noted that in order to have standing for a declaratory judgment claim, a member of the public must allege "a particularized injury distinct from that suffered by the general public." *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 555–56 (Tex. 2000).[12] Kessling contends that appellees' failure to follow mandatory financial guidelines and prepare mandatory financial reports results in her failure to: (1) get her TPIA requests for those reports fulfilled, and (2) properly review FISD's financial activities by making productive TPIA requests. In other words, Kessling maintains that appellees' refusal to follow the dictates of the Education Code defeats her right to access to information under the

10. As appellees point out, other sections of the Education Code also provide the Texas Education Agency (TEA), the Commissioner of Education, and the State Board of Education with general oversight of school districts' financial reporting. *See* Tex. Educ. Code §§ 7.021(b)(13) (mandating the TEA "review school district budgets, audit reports, and other fiscal reports"); 7.055(b)(36) (requiring the commissioner to report annually on "the status of school district fiscal management"); 7.102 (requiring the State Board to adopt rules concerning district budgets and audits of financial accounts).

11. Kessling contends that having the reports required by the Education Code prepared is a ministerial act by a public official. Kessling acknowledges that the actual preparation of the reports may require an accountant's discretion but argues that having the reports prepared is a ministerial not discretionary function because it is mandated by the code.

12. One exception to the rule requiring a "particularized injury" applies when a taxpayer alleges an illegal expenditure of public funds. *Bland I.S.D.*, 34 S.W.3d at 556. Kessling does not rely upon this exception in the present case.

TPIA. Kessling's argument, however, is defeated by the very statutes upon which she relies. As discussed above, under the Education Code provisions, she has no private right of enforcement, *see* Texas Education Code §§ 39.023, 44.002, 44.003, 44.007, 44.0071; under the TPIA, she has no right to require a governmental entity to create a document that it does not already possess, *see Sharp*, 904 S.W.2d at 676. Because Kessling has no right to require appellees to meet the dictates of the Education Code provisions either through the TPIA or the Education Code itself, she does not have a particularized injury from the appellees' alleged failure to do so. In short, she has no standing to make these claims. *See Inman*, 252 S.W.3d at 304–05. To the extent that Kessling wishes to complain generally about the logic or fairness, as opposed to the constitutionality, of the statutory schemes, she should address the Texas Legislature. The trial court did not err in dismissing Kessling's Education Code claims for lack of standing. We overrule Kessling's second issue.

## III. Cross–Appeal for Attorney's Fees

In the sole issue in their cross-appeal, appellees/cross-appellants contend that the trial court erred in declining to award them attorney's fees either under the UDJA or the Education Code. Under the UDJA, a trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. Tex. Civ. Prac. & Rem.Code § 37.004. A court may conclude that it is not equitable or just to award even reasonable and necessary fees. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998). Under the Education Code, a trial court may award attorney's fees to a defendant if (1) the suit was dismissed or judgment rendered in favor of the independent school district or school district employee, and (2) the court finds that the

suit was frivolous, unreasonable, and without foundation. Tex. Educ.Code §§ 11.161, 22.055. We review the court's refusal to award fees under either statute under an abuse of discretion standard. *Bocquet*, 972 S.W.2d at 21 (UDJA); *Loeffler v. Lytle I.S.D.*, 211 S.W.3d 331, 350 (Tex.App.-San Antonio 2006, pet. denied) (Education Code).

Because Kessling was wholly successful on her appeal of the summary judgment against her TOMA claims and at least partially successful on her TPIA claims, we will consider only her Education Code claims in addressing appellees' cross-appeal. While Kessling's Education Code claims are ultimately meritless, we cannot say that they were frivolous, unreasonable, and without foundation. The arguments were novel and were grounded in statutory and case law, even though, in the end, they were incorrect. Accordingly, the trial court did not abuse its discretion in declining to award attorney's fees under the Education Code. *See* Tex. Educ.Code §§ 11.161, 22.055. Similarly, given that Kessling successfully appealed judgment against several of her UDJA based claims, and the claims on which she was unsuccessful were nonetheless not frivolous or without foundation in the law, we cannot say that the trial court erred in refusing to find that a grant of attorney's fees would be equitable and just. Accordingly, the trial court did not abuse its discretion in declining to award fees under the UDJA. We overrule appellees' sole cross-appeal issue.

## IV. Conclusion

In summary, the trial court erred in granting summary judgment against Kessling's TOMA claims and against her claims of unfulfilled TPIA requests. The trial court properly granted judgment against Kessling's claims concerning TPIA re-

quests that have been met. The court properly dismissed her Education Code claims for want of jurisdiction. The trial court did not abuse its discretion in declining to award attorney's fees to appellees. We remand to the trial court for further consideration of Kessling's TOMA claims and her claims of unfulfilled TPIA requests.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

A concerned citizen filed suit against a school district and its superintendent alleging, among other things, various past violations of the Texas Open Meetings Act and the Texas Public Information Act. The citizen alleged that these violations showed a pattern and practice by the school district of violating these two statutes. As to both statutes, the citizen sought a declaratory judgment regarding the past violations that allegedly show a pattern and practice, and the citizen also sought mandamus or injunctive relief requiring the school district to comply with these two statutes in the future. The trial court granted the defendants' plea to the jurisdiction and motion for summary judgment and dismissed all of the citizen's claims. In her opening brief on appeal, the citizen asserts that she seeks a declaratory judgment regarding the past violations of these two statutes, allegedly showing a pattern and practice, and that she seeks mandamus or injunctive relief requiring the school district to comply with these two statutes in the future.

The majority correctly concludes that the citizen's claims for declaratory relief as to the Texas Open Meetings Act are not moot and that in her request for mandamus or injunctive relief as to this statute the citizen does not seek an advisory opinion. Likewise, the majority correctly concludes that the trial court erred in dismissing the citizen's Texas Public Information Act claims to the extent they sought to compel disclosure as to unfulfilled requests. However, as to the citizen's request for declaratory relief regarding requests that were fulfilled in the past, although in a manner that allegedly violated the Texas Public Information Act, the majority incorrectly concludes that these claims are moot because, on appeal, the citizen does not assert that she is seeking declaratory relief to show a pattern and practice that would form a basis for mandamus or injunctive relief. Contrary to the majority's conclusion, in her appellant's brief, the citizen does state that she is asserting similar declaratory, mandamus, and injunctive relief under both the Texas Open Meetings Act and the Texas Public Information Act. Therefore, this court should hold that none of the citizen's claims for declaratory relief regarding violations of the Texas Public Information Act are moot and that in her request for mandamus or injunctive relief regarding this statute the citizen does not seek an advisory opinion. Because it does not, I respectfully dissent.

### Allegations in the Citizen's Live Petition

In her live petition, appellant/plaintiff Nancy Kessling asserts, among other things, similar allegations and requests for relief regarding the Texas Open Meetings Act ("Meetings Act") and the Texas Public Information Act ("Information Act"). In suing defendants/appellees Friendswood Independent School District ("School District") and its superintendent Patricia Hanks (collectively the "School District Parties"), Kessling made the following allegations:

The [School District] has a pattern and practice of violating the notice and open

meeting provisions of the [Meetings Act], as evidenced by the fact that [the School District] has continued to violate the [Meetings Act] prior to and during the pendency of this suit. Kessling seeks a declaratory judgment under the [Uniform Declaratory Judgments Act] that [the School District] has violated the [Meetings Act] through its past actions. Kessling seeks injunctive relief to prevent [the School District] from continuing to violate the [Meetings Act] through these actions.

. . .

Plaintiff Kessling seeks a declaratory judgment regarding each of these violations, and a writ of mandamus and/or injunctive relief to require that the [School District] comply with the procedural requirements of the [Meetings Act] . . .

. . .

The [School District] has demonstrated a pattern and practice of failing and refusing to either release public information or to request attorney general decisions to authorize withholding the information. The [School District] has demonstrated a pattern and practice of refusing to release information listed in the [Information Act] as information that should be released without question and without delay. TEX. GOV'T CODE ANN. § 552.022. The [School District] has demonstrated a pattern and practice of delaying the release of information for an inordinately long time, sometimes months, failing to comply with the timeliness requirements of the [Information Act]. Kessling seeks a declaratory judgment under the Uniform Declaratory Judgment [sic] Act that [the School District] has violated the [Information Act] for each of the alleged incidents that constitute a part of the pattern and practice.

. . .

Plaintiff Kessling seeks a declaratory judgment regarding each of these violations, and a writ of mandamus and/or injunctive relief to require that the [School District] comply with the procedural requirements of the [Information Act] and to compel disclosure of all requested information . . .

. . .

Plaintiff respectfully requests that, upon trial of this case, the Court:

> 1) find that Defendants have violated the requirements of the [Meetings Act] and order that the Defendants comply with the Act . . .

> 2) find that Defendants have violated the requirements of the [Information Act] and order that the Defendants comply with the procedural requirements of the Act . . .

As to both the Meetings Act and the Information Act, Kessling sought a declaratory judgment as to past violations of these statutes, which she alleged constituted a pattern and practice. Then, based on these past violations, Kessling sought mandamus or injunctive relief requiring the School District to comply with these two statutes in the future.

### The School District Parties' Motion For Summary Judgment and Plea to the Jurisdiction

The trial court granted the School District Parties' "Motion for Summary Judgment and Plea to the Jurisdiction." As to Kessling's Meetings Act and the Information Act claims, the School District Parties did not specify whether they were asserting a plea to the jurisdiction or a motion for summary judgment. As to both the Meetings Act and the Information Act claims, the School District Parties asserted that the trial court lacked jurisdiction based on mootness and Kessling's alleged

request for an advisory opinion. These arguments constitute an attack on the trial court's jurisdiction and thus fall within the plea to the jurisdiction. As to the Information Act claims, the School District Parties also asserted that section 552.3215 of the Government Code prohibits Kessling from obtaining the declaratory, injunctive, and mandamus relief that she seeks in this case. *See* TEX. GOV'T CODE ANN. § 552.3215 (Vernon 2004). This argument constitutes an attack on the merits of Kessling's claims and is part of the summary-judgment motion.

### The Citizen's Opening Brief on Appeal

In pertinent part, Kessling makes the following statements in her opening brief on appeal:

> Kessling seeks a declaration that [the School District] has violated the [Information Act], [the Meetings Act], and Education Code in a specific manner, and an order requiring that [the School District] comply with these laws in the future to avoid these violations . . .
>
> . . .
>
> Kessling filed this action, alleging a pattern and practice of [Meetings Act], [Information Act], and Education Code violations . . .
>
> . . .
>
> Kessling asserted that her public information requests remain unfulfilled to this day, and she sought both mandamus and declaratory relief to cure [the School District's] past and ongoing violations of the [Information Act] . . .
>
> . . .

In paragraph 6.17 of her petition, Kessling seeks a declaratory judgment on each of the alleged violations **and** a writ of mandamus and/or an injunction to "require that the [School District] comply with the procedural requirements of the [Information Act] and to compel disclosure of all requested information." Kessling sought the same relief in her general prayer.

(emphasis in original). The Supreme Court of Texas has stressed that appellate courts must construe an appellant's brief "reasonably, yet liberally" so as to "reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex.2008); *see also Ditta v. Conte*, 298 S.W.3d 187, 189–90 (Tex. 2009) (construing petitioner's brief liberally to contain argument that it did not expressly contain because it contained similar and related arguments). Under this construction, Kessling, in her opening brief, asserts that she seeks declaratory relief as to past violations of the Information Act, including violations of the procedural requirements of the statute in cases in which the School District already has provided the requested information.[1] Kessling also asserts in her opening brief that, based on these past violations, she seeks mandamus or declaratory relief to order the School District to comply with the Information Act in the future. Therefore, the majority incorrectly concludes that Kessling has failed to sufficiently brief that she seeks *declaratory* relief as to past procedural violations of the Information Act and that she seeks mandamus or injunctive relief to prevent future violations of this statute.[2] *See ante* at p. 384.

1. Kessling alleges that the School District has a pattern and practice of violating certain procedural requirements of the Information Act, for example the requirement that "[a]n officer for public information of a governmental body shall *promptly* produce public infor-

mation for inspection, duplication, or both on application by any person to the officer." TEX. GOV'T CODE ANN § 552.221(a) (Vernon 2004) (emphasis added).

2. According to the majority, Kessling does not argue on appeal "that she is entitled to seek

### The Effect of the Citizen's Adequate Briefing

Because Kessling adequately briefed the relief that she sought regarding the past procedural violations of the Information Act, this court should conclude, as it does for the claims regarding the Meetings Act, that Kessling's declaratory judgment claims are not moot and her claims for injunctive or mandamus relief do not contain a request for an advisory opinion. In adjudicating the jurisdictional challenges to the Meetings Act claims, the majority concludes that the trial court has jurisdiction because Kessling seeks to use the alleged pattern and practice of past violations as a basis for showing her entitlement to mandamus or injunctive relief as to future violations. *See ante* at p. 381. As to the Meetings Act claims, the majority correctly notes that a decision that the claims are not moot or unripe does not speak to the merits of these claims. *See ante* at p. 381; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex.2000) (stating that courts may not reach the merits of the parties' claims in deciding jurisdictional issues); *In re Sullivan*, 157 S.W.3d 911, 920 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding [mand. denied]) (refusing to consider arguments attacking the merits of the claims in deciding whether trial court clearly abused its discretion by denying plea to the jurisdiction). Instead of finding briefing waiver, the majority should apply the same analysis to the Information Act claims as to fulfilled

requests that the majority applies to the Meetings Act claims.

However, in discussing the same jurisdictional issues as to the Information Act claims, the majority incorrectly states that the merits of these claims are at issue on appeal.[3] The majority states that Kessling has not argued on appeal that the Information Act affords the mandamus or injunctive relief that she seeks. *See ante* at p. 384. The majority further asserts that Kessling has not briefed "the issue of whether the [Information Act] *affords her the right to seek mandamus or injunctive relief* instructing [the School District Parties] to follow the [Information Act] in the future." *Id.* at p. 384, n. 9 (emphasis added). The majority concludes that Kessling has not argued on appeal that she is seeking mandamus or injunctive relief as to the fulfilled Information Act requests. *See id.* at p. 384–85. In addition, the majority suggests that, even if Kessling's appellate briefing were sufficient, this court would analyze the mootness and advisory-opinion issues differently as to the Information Act claims because of differences in the merits of those claims. *See id.* However, the relief Kessling seeks as to the alleged Information Act violations regarding fulfilled requests is substantially similar to the relief she seeks as to the alleged Meetings Act violations. Presuming for the sake of argument that Kessling's claims for mandamus or injunctive relief as to the alleged Meetings Act violations have merit but that, under the applicable statutes and equitable principles,

---

mandamus or injunctive relief, as she did in connection with her [Meetings Act] claims, instructing appellees to follow the law in the future." *Ante* at p. 384. The majority then states that Kessling "neither argues that [the Information Act] allows for such relief nor seeks any other injunctive or other affirmative relief as [to] her requests [that] have been fulfilled." *Id.*

3. The merits of the Information Act claims were challenged by the summary-judgment ground based on section 552.3215 of the Government Code. However, the majority correctly concludes that this ground lacks merit, and the School District Parties did not attack the Information Act claims on any other basis. *See ante* at p. 382–83.

Kessling is not entitled to mandamus or injunctive relief as to the Information Act claims, these issues regarding the merits would not affect the jurisdictional analysis in the instant appeal. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554–55; *In re Sullivan*, 157 S.W.3d at 920.

Therefore, this court should sustain the first issue in its entirety, reverse the trial court's judgment as to all of Kessling's claims regarding the Meetings Act and the Information Act, and remand for further proceedings. To the extent it does not do so, I respectfully dissent.