John CORNYN, Attorney General of the State of Texas and The Dallas Morning News, Inc./City of Garland, Texas, Appellants,

v.

CITY OF GARLAND, Texas/John Cornyn, Attorney General of the State of Texas and The Dallas Morning News, Inc., Appellees.

No. 03–98–00512–CV.

Court of Appeals of Texas, Austin.

May 20, 1999.

---

John Cornyn, Attorney General, Brenda Loudermilk, Assistant Attorney General, Austin, for Attorney General of Texas.

Joel R. Sharp, Jenkens & Gilchrist, P.C., Dallas, for The Dallas Morning News.

Michael Betz, Banowsky, Betz & levine, P.C., Dallas, for City of Garland.

Charles M. Hinton, City Attorney, Brad Neighbor, First Assistant City Attorney,

Mark Dempsey, Asst. City Atty., Garland, for City of Garland.

Before Justices KIDD, PATTERSON and POWERS.*

JOHN E. POWERS, Justice (Retired).

The Attorney General of Texas and the Dallas Morning News, Inc., appeal from a summary judgment recovered by the City of Garland, Texas, in the City's suit against the attorney general in which the News intervened. We will affirm the judgment.

## THE CONTROVERSY

Kenneth Turner, aged sixteen years, drowned May 23, 1997, in Bradfield swimming pool operated by the City. The city manager saw a May 26, 1997, television broadcast of an interview with Tamika Carter, Kenneth's mother. She apparently attributed Kenneth's death to the negligence of the City and its employees, stating in the broadcast that City employees "didn't know how to give [Kenneth] correct procedures" after pulling him from the pool, that she wanted "the pool closed," and that she wanted "to take them for everything they've got." The television reporter, in closing the interview, stated that "[a] third party is investigating the drowning."

Beginning three days after the television broadcast, the News applied to the City under the provisions of the Texas Public Information Act to obtain copies of the following items: (1) a "911" emergency-telephone sound recording related to Kenneth's drowning; (2) an "incident report" prepared by the City in connection with his death; (3) lifesaving and "CPR" certificates possessed by lifeguards assigned to four City swimming pools, including the Bradfield pool where Kenneth died; and (4) a City manual or set of guidelines for lifeguards. *See* Tex. Gov't Code Ann. § 552.221 (West Supp.1999) (Texas Public Information Act, or "TPIA"). The City

declined to provide the copies and, as authorized by TPIA section 552.301(a), solicited the attorney general's opinion and decision. In its request, the City stated its position that the four items came within the "litigation exception" of TPIA section 552.103(a)(1). That statute provides that information need not be disclosed to the public if the information relates "to litigation of a civil or criminal nature ... to which the [governmental body] *is* or *may be* a party." TPIA § 552.103(a)(1) (West 1994) (emphasis added).

In its submission to the attorney general, the City was required to give written reasons why the litigation exception justified withholding the items requested by the News. *See* TPIA § 552.301(b) (West Supp.1999). Regarding the "911" sound recording and the incident report, the City gave as its sole reason the remarks made by Tamika Carter in her television interview. Regarding the lifeguard materials, the City stated that these items related to pending litigation that had arisen from similar events at City swimming pools. Based on these reasons, the City asserted before the attorney general that the City "reasonably anticipated litigation" based on Kenneth's death.

The expression "reasonably anticipated litigation" is a term of art derived from the attorney general's Open Records Decision 638 (1996), construing the litigation exception to require "concrete evidence that the claim that litigation might ensue is more than mere conjecture."[1] Tex. Att'y Gen. ORD–638 (1996); *see Heard v. Houston Post Co.*, 684 S.W.2d 210, 212 (Tex.App.— Houston [1st Dist.] 1985, writ ref'd n.r.e.).

In a series of decisions, the attorney general determined as follows: (1) the "911" sound recording and the incident report did not come within the litigation exception because the City's only stated reason—Tamika Carter's remarks in her

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The word "evidence" is not employed here in its technical sense. The attorney general conducts no evidentiary hearing in its decisionmaking under TPIA section 552.306.

television interview—was insufficient to justify a reasonable anticipation of litigation; however, (2) the existence of pending litigation, to which the lifeguard materials related, brought these materials within the litigation exception.

The City sued the attorney general in district court for a declaratory judgment that the City's anticipation of litigation, as to the "911" sound recording and incident report, was in fact reasonable. The attorney general appeared and answered in the cause to defend his decision. The News intervened, requesting declaratory relief, a permanent injunction, and a writ of mandamus to obtain the lifeguard materials and, in an apparently unrelated claim, to prevent future violations of the Texas Open Meetings Act by the city council of the City of Garland. *See* Tex. Gov't Code Ann. § 551.142 (West 1994) (Texas Open Meetings Act, or "TOMA").

While the lawsuit was pending in district court, and fifteen days after the News intervened, the City received from Tamika Carter and Hattie Lee Carter formal claims alleging that Kenneth's death was caused by the City's negligence. Asserting that each of them was entitled to resulting damages in excess of $500,000, the Carters claimed to be representatives of Kenneth's estate and listed the name of their attorney on the claim form.

The City moved for summary judgment on its action for declaratory judgment that the litigation exception authorized withholding all the items requested by the News. In its motion, the City augmented its reasons for anticipating litigation by adding to Tamika Carter's television remarks the contents of several affidavits. These included the affidavit of the city secretary, verifying receipt of the claim forms filed by Tamika Carter and Hattie Lee Carter, and the affidavit of the city manager, stating that before the television broadcast of May 26, 1997, Tamika Carter told him not to telephone her again and to deal "only with her attorney in the future."

The attorney general moved for summary judgment sustaining his decision regarding the "911" sound recording and the incident report. The News moved for summary judgment on its claims under TPIA and TOMA, asserting it was entitled as a matter of law to the "911" sound recording, the incident report, the lifeguard materials, and a list of pending lawsuits involving the City. (The City has since made available and the News has obtained the list of lawsuits and it is no longer in controversy.)

In deciding the three motions for summary judgment, the district court ordered as follows: (1) TPIA did not require the City to disclose the "911" sound recording, the incident report, or the lifeguard materials; (2) the News' claim under TOMA was moot and its related claims for relief were denied; (3) each party's claim for attorney's fees was denied; and (4) the three motions for summary judgment were denied in all other respects.

The attorney general and the News appealed; the City appealed from the summary-judgment order insofar as it denied the City's claim for attorney's fees, a matter discussed below.

## THE LITIGATION EXCEPTION

The News and the attorney general assign as error the district court's decision that the litigation exception justified the City's refusal to disclose the "911" sound recording and the incident report. They contend, as they did in their motions for summary judgment, that under a proper interpretation of TPIA the issue of whether the City reasonably anticipated litigation from the death of Kenneth Turner must be determined exclusively by the reason the City furnished the attorney general in soliciting his decision—the televised remarks of Tamika Carter. And these remarks, the News and the attorney general contend, fell short of the concrete evidence required to justify a reasonable anticipation of litigation.

The News and the attorney general do not dispute that when Tamika Carter and Hattie Lee Carter filed with the City their formal notices of claim, this amounted to sufficiently concrete evidence. The News and the attorney general contend, however, that the City's summary-judgment proof of those claims was beyond the power of the district court to consider because the filing of the claims was not among the reasons given the attorney general when the City requested his decision and opinion.

We believe the position taken by the News and the attorney general is necessarily foreclosed by our decision in *City of San Antonio v. Texas Attorney General,* 851 S.W.2d 946, 950 (Tex.App.—Austin 1993, writ denied). In *City of San Antonio,* the attorney general contended the governmental body "waived" a particular reason for nondisclosure because the governmental body "did not urge that contention when it requested an opinion of the attorney general." *City of San Antonio,* 851 S.W.2d at 950. We pointed out that a governmental body's request for the attorney general's opinion and decision under TPIA "does not give rise to a species of litigation culminating in a decision by that officer that binds parties in their legal and equitable interests. . . . The attorney general's opinions, like the other opinions given by that officer, are purely ministerial and advisory, although the procedures for requesting such opinions are designed to enable the attorney general to perform his or her duty—to arrive at and furnish governmental bodies with the soundest possible advisory opinions." *Id.* We should explain further.

■ It is by force of TPIA itself, and not by any force inherent in the attorney general's decision, that requested information "is presumed to be public information" if the governmental body does not request the attorney general's decision and opinion in a particular case. *See* TPIA § 552.302 (West 1994). In the present case, the City avoided the statutory presumption by requesting the attorney general's decision and opinion. While the attorney general rejected the City's position in the dispute, regarding the "911" sound recording and incident report, nothing in TPIA or elsewhere made that officer's decision binding on anyone and nothing required the City to submit to it. The attorney general's decision was purely advisory. It was not based on any evidentiary hearing. It was not in any sense an actual adjudication as to any issue of fact or law relating to whether the City reasonably anticipated litigation from Kenneth's death or the applicability of the litigation exception.

Nor was the City required to await a mandamus action or a criminal prosecution under TPIA section 552.353 and defend at that time based on its contention that its anticipation of litigation was in fact reasonable in the circumstances *then or therefore* existing. TPIA explicitly acknowledges a governmental body's right to sue for declaratory judgment challenging and seeking relief from the attorney general's decision. *See* TPIA §§ 552.324, .325 (West Supp.1999). The City filed in the present cause a suit of that character.

■ While recognizing a governmental's body's right to sue the attorney general for declaratory judgment, nothing in TPIA purports to limit the court's jurisdiction in such cases. Nothing in TPIA purports to prescribe a manner of proceeding in such cases, save for provisions designed to protect the interests of the person who requested the information from the governmental body. *See* TPIA § 552.325 (West Supp.1999). Nothing in TPIA purports to limit or prescribe the evidence the court may receive, the issues of fact or law that may be decided, or the kind of declaratory relief that may be granted by the court and on what grounds. This is in stark contrast to the judicial-review provisions of the Texas Administrative Procedure Act, for example, that governs the substantial-evidence review of the contested-case decisions of most administrative agencies. In those suits, the court's review is limited to

questions of law; these are determined based solely on the record of proceedings compiled in and by the agency and the evidence contained in such record; the reviewing court is expressly prohibited to weigh that evidence and expressly prohibited to receive additional evidence save in extraordinary circumstances; and the court may reverse the agency decision and remand the case to the agency for further proceedings only if an error of law by the agency has prejudiced the substantial rights of the person bringing the suit. *See* Tex. Gov't Code Ann. §§ 2001.174, .175(e) (West 1998).

The legislature has not dictated any similar provisions to govern suits for declaratory relief brought by a governmental body under TPIA. This implies in the strongest terms that the legislature intended that such actions be determined within the district court's general original jurisdiction and according to the procedure followed in an ordinary suit brought under the Uniform Declaratory Judgments Act. *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. § 24.007 (West 1998); Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (West 1997); *see, e.g., Houston Indep. Sch. Dist. v. Houston Chronicle,* 798 S.W.2d 580, 583 (Tex.App.—Houston [1st Dist.] 1990, writ denied). In other words, declaratory-judgment actions brought by a governmental body under TPIA are brought, heard, and determined in the same manner as civil actions generally, based on the statutes or other instruments involved, the issues of fact and law that arise in the suit, and the evidence received in court. Actions of this kind may result in the *first* adjudication of such controversies because any preceding decision of the attorney general, if one was obtained, is not an adjudication at all. It necessarily follows that the district court did not err in basing its decision on the summary-judgment proof filed in that court, including the undisputed fact that Tamika Carter and Hattie Lee Carter filed their notices of claim with the City after the litigation commenced.

We hold, therefore, that the district court did not err in its judgment respecting the "911" sound recording and the incident report requested by the News.

■ The News assigns as error that part of the summary-judgment order declaring that the City need not disclose its lifeguard materials. The News argues that the materials do not come within the litigation exception or any other exception because TPIA provides as follows: "Without limiting the amount or kind of information that is public information under this chapter, the following categories of information *are* public information: ... (14) administrative staff manuals and instructions to staff that affect a member of the public." TPIA § 552.022(14) (West Supp. 1999) (emphasis added). The News contends this provision categorically forecloses any possibility that *any* exception can apply to items of information coming within TPIA section 552.022(14).

■ We reject the News' argument that the kinds of information described in TPIA section 552.022 are never subject to an exception because they are therein declared categorically to be "public information." We do not believe this was the legislature's intention. The eighteen categories of information described in section 552.022 are not all alike. For example, it would be difficult to imagine a case where an exception could be applicable to the information described in subsections 552.022(6)–(9). On the other hand, we do not believe the legislature intended that the exception made for "information relating to ... the location of real property" and "appraisals or purchase price" of such property should be inapplicable in the period "prior to public announcement of the project" or the award of a contract for the property, even though the governmental body possessed "a completed report, ... evaluation, or investigation" regarding such matters. TPIA § 552.022(1) (West Supp.1999); *see* TPIA § 552.105 (West 1994). Concerning information described in TPIA section 552.022(14), we can imag-

ine no reason why the legislature could have intended that the lifeguard materials should not come within the litigation exception. By its literal language and its very nature as an *exception*, the litigation exception of TPIA section 552.103(a) assumes the disputed information *is* public information, as TPIA section 552.022(14) declares, yet the legislature provided that very exception.

■ Finally, the News contends that genuine issues of material fact precluded summary judgment as to the applicability of the litigation exception to the lifeguard materials.

At the time the News requested the lifeguard materials, the City was involved in pending litigation arising from drowning incidents at other city-owned swimming pools. In opposition to the City's motion for summary judgment in the present case, the News filed the affidavit of its reporter. On appeal, the News contends the contents of the reporter's affidavit and the affidavit of Michael J. Betz, the City's lawyer in the other, pending litigation, were in conflict regarding certain issues of material fact. Consequently, the trial court erred in rendering summary judgment that the City need not discuss the lifeguard materials.

The News reporter swore that Betz told the reporter that the lifeguard materials had been furnished the plaintiffs in the pending litigation in the course of "discovery." If so, the City lost its right to rely upon the litigation exception because TPIA provides as follows: a government body may *voluntarily* make "part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law"; and public information thus made available voluntarily *"must be made available to any person."* TPIA § 552.007(a), (b) (West Supp.1999) (emphasis added).

While Betz denies making the statement attributed to him by the reporter, we will assume the truth of the reporter's affidavit.

The provisions of TPIA section 552.007(a) and (b) were raised by the News as an affirmative defense to the City's declaratory-judgment action and its motion for summary judgment. The News therefore bore the burden of showing a disputed fact issue as to each element of the defense. *See* 3 *Texas Civil Practice* § 18.7, at 464–65 (Diane M. Allen et al. eds., 1992 ed.).

■ The reporter's affidavit fails in this respect regarding two elements. The first pertains to the voluntariness of the City's action in allegedly disclosing the lifeguard materials in the other, pending litigation. That the documents were provided pursuant to "discovery" in that litigation, as the reporter stated, implied in fact that they were provided because the rules of "discovery" required disclosure. More to the point, nothing in the reporter's affidavit or elsewhere in the record suggests that the documents were provided *voluntarily* as TPIA section 552.007(a) requires. Second, the City's act in allegedly disclosing the lifeguard materials in the other, pending litigation does not, as a matter of law, foreclose the City's reliance upon the litigation exception in *prospective* litigation wherein the lifeguard materials may become relevant. The primary purpose of the litigation exception is to enable governmental bodies to protect their position in litigation by requiring parties seeking relevant information to obtain it, if at all, through "discovery" processes; and that purpose may survive a previous disclosure to be applicable in prospective litigation involving the same information. *See* Tex. Att'y Gen. ORD–454 (1986) (governmental body may retain legitimate reasons for insisting that prospective plaintiff obtain information through "discovery," notwithstanding governmental body's previous disclosure of information to prospective co-defendant). Nothing in the reporter's affidavit or elsewhere in the summary-judgment record suggests any basis for con-

cluding that the City exhausted its interest in the litigation exception by its disclosure of the lifeguard materials in the other, pending litigation.

■ In his affidavit, the reporter also swore that Betz seated the reporter in a room in Betz's offices and allowed the reporter "to review and obtain copies of any of the documents in the room." Copies of the documents thus obtained by the News reporter were attached to his affidavit filed in opposition to the City's motion for summary judgment. In Betz's affidavit, he denies that the documents thus furnished the reporter are the same documents requested by the News—documents we have referred to as the "lifeguard materials." We will assume again the truth of the reporter's affidavit and turn to the News' contentions on appeal that this disclosure of the lifeguard materials, to the News reporter, precluded the City's reliance upon the litigation exception; and, that the conflicting affidavits raised genuine issues of material fact precluding summary judgment.

■ If the documents requested by the News are the same as those attached to the reporter's affidavit, then any issue would appear to be moot with respect to those documents. If however, the reporter's affidavit is understood as verifying the existence of other lifeguard materials not supplied pursuant to the City's request, we believe summary judgment was not precluded by reason of a genuine issue of material fact. The waiver resulting from a governmental body's disclosure of documents extends "only to the documents released, and not with respect to other, related documents." 37A Am.Jur.2d *Freedom of Information Acts* § 77, at 117 (1994). We concur with the reasoning that a contrary rule would inhibit the purpose of TPIA, which is to encourage the free release of information. Under such a contrary rule, governmental bodies would tend to refuse to make disclosures of information other than those explicitly required by law, avoiding thereby the risk of com-pelled disclosure of related documents in litigation. They "would have an incentive to refuse to release all exempt documents if [they] wished to retain an exemption for any documents." *Mobil Oil Corp. v. United States Envtl. Protection Agency,* 879 F.2d 698, 701 (9th Cir.1989).

We hold the trial court did not err in its summary judgment with respect to the litigation exception.

## TEXAS OPEN–MEETINGS ACT VIOLATIONS

In its original pleading in intervention, the News alleged that the notices posted by the City in advance of closed meetings of the city council described insufficiently the subjects to be discussed in those meetings. *See* TOMA § 551.041 (West 1994); *Cox Enters., Inc. v. Board of Trustees,* 706 S.W.2d 956, 959–60 (Tex.1986). The News prayed for a declaratory judgment that the notices posted by the City for past meetings of the city council violated TOMA and for a permanent injunction and writ of mandamus requiring that the City "fully comply with [TOMA] with regard to notice of meetings in the future." *See* TOMA § 551.142(a) (West 1994); Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (West 1997). The News complains on appeal that the district court sustained in that respect the City's motion for summary judgment. We believe the district court did not err.

Among the City's responses to the News' motion for summary judgment, the City pleaded that the News' claims were moot insofar as they related to the notices posted previously for past city council meetings and required an advisory opinion, beyond the power of a court to give, insofar as they related to notices of future closed meetings.

■ Concerning the apparent mootness of the News' claim relating to notices of past meetings, the News argues the doctrinal exception made for acts that are "capable of repetition yet evading review." We believe the exception is inapplicable.

TOMA itself provides that any "interested person, including a member of the news media," has the right of *immediate* judicial review by way of an application for writ of "mandamus or injunction to stop, prevent, or reverse a violation or threatened violation" of the notice requirement. TOMA § 551.142(a) (West 1994) (emphasis added). If a violation evades review, the reason does not lie in the inherent nature of the allegedly wrongful act. It lies rather in the failure of the "interested person" to invoke the immediate remedy expressly provided by the legislature. *See Spring Branch I.S.D. v. Reynolds,* 764 S.W.2d 16, 18 (Tex.App.—Houston [1st Dist.] 1988, no writ). It is not contended that the statutory remedy is inadequate for the purpose.

 As to notices required to be posted in connection with future closed meetings of the city council, we believe the News' claim requires an advisory opinion. The legal sufficiency of any such notice will depend on its particular content. Because such a notice has not yet been composed or posted, its content can only be a matter of speculation and conjecture. For that reason the News' claim requires an advisory opinion that lies outside the judicial power. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993); *Coalson v. City Council of Victoria,* 610 S.W.2d 744, 747 (Tex.1980).

We overrule the News' assignment of error regarding its TOMA claim.

### ATTORNEY'S FEES

The City and the News appeal from the decision of the district court denying their claims for attorney's fees. On submission of the appeal, the City waived in open court its claim for such fees and we need not consider the City's appeal on that issue.

The News contends, apparently, that the district court abused its discretion because it denied the News' claim for attorney's fees even though "the trial court correctly found 'overwhelming evidence' that it was only by the 'diligent effort' of the News that Garland transformed its meeting practices to comply with state law [TOMA]." Having thus "prevailed" in its position under TOMA, the News argues, it was entitled to its attorney's fees under TOMA section 551.142(b) and section 37.009 of the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997); TOMA § 551.142(b) (West 1994).

 We overrule the assignment of error. The trial-court "finding" to which the City refers is not a finding in the ordinary sense; it is a statement in the trial judge's letter to counsel. Because the News did not succeed on any material aspect of the litigation made by the pleadings, we hold the trial court did not abuse its discretion in declining to award the News its attorney's fees.

We affirm the district court judgment.