Affirmed
in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions
filed November 3, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01063-CV

____________

 

NANCY KESSLING, Appellant

 

V.

 

FRIENDSWOOD INDEPENDENT SCHOOL
DISTRICT AND PATRICIA HANKS, Appellees

 



 

On Appeal from the 56th
District Court

Galveston County, Texas

Trial Court Cause No. 06-CV-0884

 



 

M A J O R I T Y   O P I N I O N








Nancy Kessling sued appellees, Friendswood
Independent School District (AF.I.S.D.@) and its
superintendent, Patricia Hanks, for various alleged violations of the Texas
Open Meetings Act (ATOMA@), Texas Public
Information Act (ATPIA@), and Texas
Education Code.  In two issues on appeal, Kessling contends that the trial
court erred in (1) granting summary judgment against her TOMA and TPIA claims,
and (2) dismissing her Education Code claims for want of jurisdiction.  In a
cross-appeal, appellees/cross-appellants contend that the trial court erred in
not awarding them attorney=s fees.  We affirm in part and reverse and
remand in part.

I.  Background

Kessling styles herself as a Apublic watchdog,@ having followed
the actions of the F.I.S.D. school board for over twenty years and Aroutinely@ using TPIA
requests to monitor its activities.  Kessling asserts that she lives in the
area served by F.I.S.D., that she pays taxes to F.I.S.D., and that her children
attended F.I.S.D. schools.  On August 9, 2006, she filed the present lawsuit,
seeking injunctions and declarations concerning alleged violations of the TOMA,
TPIA, and Education Code.  Kessling=s original
petition named only superintendent Hanks as a defendant; FISD was added by
later amended petition.  Specifically, in her third amended petition, the live
petition at the time of judgment,[1]
Kessling alleged that appellees violated the TOMA by (1) deliberating illegally
after adjournment, (2) failing to post proper notice of topics to be considered
in executive sessions, (3) discussing matters not on the agenda in executive
sessions, (4) permitting employees to attend executive sessions, and (5)
failing to keep proper minutes and electronic recordings of meetings.  She
further alleged that appellees violated the TPIA by refusing to either provide
certain requested information or request an attorney general=s opinion, which
would authorize such refusal, and by untimely or otherwise inappropriately
fulfilling other requests.  She also alleged that appellees violated the
Education Code by failing to follow certain accounting practices and procedures
and file certain related reports required under the code.  Kessling sought
declaratory judgment regarding the alleged violations and requested mandamus
and injunctive relief regarding certain past violations and to prevent certain
of the violations from reoccurring.








In response to Kessling=s original
petition, styled APlaintiff=s Original
Application for Writ of Mandamus and Petition for Permanent Injunction,@ Hanks answered,
making general and special denials of the allegations, raising various
affirmative defenses, and requesting attorney=s fees under the
Education Code for the filing of a frivolous lawsuit.  Hanks also filed special
exceptions, claiming that in the petition, Kessling failed to (1) give fair
notice of the claims asserted, (2) demonstrate standing regarding certain
claims, (3) identify specific acts claimed to be violations or that Kessling
was seeking to enjoin, and (4) state a cause of action.[2] 
Although Kessling filed several supplemental petitions, the trial court granted
the special exceptions and ordered Kessling to replead within 30 days to cure
the pleading defects.

After Kessling filed a first amended
petition, which, inter alia, added F.I.S.D. as a defendant, and then a
second amended petition, appellees filed a combined motion for summary judgment
and plea to the jurisdiction.  In the summary judgment portion of this
pleading, appellees contended that Kessling=s TOMA and TPIA
claims were moot as they related to actions in the past and requested an
impermissible advisory opinion as they related to actions in the future.  In
regards to the TPIA claims, appellees additionally argued that Kessling failed
to follow the proper procedures for bringing an action for declaratory judgment
or injunctive relief under that act:  specifically that she should have filed a
complaint with the district or county attorney for Galveston County, where
F.I.S.D. is located.  In the plea to the jurisdiction portion of appellees= pleading,
appellees asserted that the trial court did not have jurisdiction over Kessling=s Education Code
claims because appellees had governmental immunity with regard to such claims. 
Appellees further argued that Kessling lacked standing to raise the Education
Code claims because the code did not provide for a right of private action and
because Kessling failed to allege an injury which was distinct to her as
opposed to effecting the general public.








In her response to the motion and the
plea, Kessling maintained that her TOMA claims were not rendered moot by the
fact that alleged violations had occurred in the past and that it was thus not
improper for a court to declare that prior actions violated the TOMA.  She
further argued that her allegations established a Apattern and
practice@ of TOMA
violations; thus, mandamus and injunctive relief would be appropriate to
prevent future violations.  Regarding her TPIA claims, Kessling asserted that
according to established caselaw, the TPIA permits private citizens to bring
direct action against governmental bodies to enforce TPIA provisions.  With
regard to appellees= plea to the jurisdiction, Kessling
asserted that she had standing and the trial court had jurisdiction over her
claims because members of the public have a right to seek (1) mandamus relief
to compel a public official to perform a ministerial duty, and (2) declaratory
relief against state officials who act without legal or statutory authority. 
She argued that the duties at issue in her Education Code claims, namely
compliance with certain statutory accounting policies and procedures, were
ministerial acts requiring no discretion, and thus, governmental immunity was
not applicable.  She further contended that permitting F.I.S.D. to avoid its Education
Code accounting duties would effectively stymie public monitoring of its
financial activities because under the TPIA, a government entity cannot be
required to create documents but can be required only to produce documents it
has already created.  As discussed above, with the trial court=s permission,
Kessling subsequently filed her third amended petition.

The trial court granted the motion for
summary judgment and plea to the jurisdiction without specifying the bases
therefor.  Appellees then moved for attorney=s fees.  The trial
court thereafter filed another order, again stating that the summary judgment
motion and jurisdictional plea were granted and that all of Kessling=s claims were
dismissed with prejudice.  Although the order does not mention appellees= motion for fees,
the trial court expressly denied that motion during an oral hearing.

II.  Kessling=s Issues








As stated, in two issues, Kessling
contends that the trial court erred in granting summary judgment against her
TOMA and TPIA claims and in dismissing her Education Code claims for want of
jurisdiction.

A.  Summary Judgment[3]

In her first issue, Kessling contends that
the trial court erred in granting summary judgment against her TOMA and TPIA
claims.  She asserts that the trial court=s legal
conclusions were in error and that genuine issues of material fact exist
precluding summary judgment.  We analyze the grant of a traditional motion for
summary judgment under well‑established standards of review.  See
generally Tex. R. Civ. P. 166a; Nixon v. Mr. Prop.  Mgmt. Co., Inc.,
690 S.W.2d 546, 548‑49 (Tex. 1985).  The movant bears the burden to show
that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  We review the motion
and any evidence de novo, taking as true all evidence favorable to the
nonmovant, and indulging every reasonable inference and resolving any doubts in
the nonmovant=s favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).

1.  TOMA Claims








The Texas Legislature enacted the TOMA in
1967 to ensure Athat the public has the opportunity to be
informed concerning the transactions of public business.@  Acker v. Tex.
Water Comm=n, 790 S.W.2d 299, 300 (Tex. 1990)
(quoting Act of May 23, 1967, 60th Leg., R.S., ch. 271, ' 7, 1967 Tex. Gen.
Laws 597, 598).  Under the TOMA, all meetings of governmental bodies must be
kept open to the public unless the law expressly authorizes a closed session.  See
Tex. Gov=t Code. ' 551.002.  The
TOMA contains provisions governing how and when notices of meetings are to be
posted and what the contents of those notices must be.  See id. '' 551.041-.043,
551.045, 551.047, 551.051-.052.  The TOMA additionally imposes certain
requirements unique to closed sessions, including that a certified agenda or
electronic recording must be kept and that any vote or final action must occur
in an open meeting.  See id. '' 551.102-.103. 
Government Code section 551.142(a) provides that A[a]n interested
person . . . may bring an action by mandamus or injunction to stop, prevent, or
reverse a violation or threatened violation of [TOMA] by members of a
governmental body.@  As explained above, in the present
action, Kessling seeks a declaration concerning appellees= alleged prior
TOMA violations and a mandamus or injunction barring similar violations in the
future.

In their motion for summary judgment,
appellees argued that Kessling=s TOMA claims were moot to the extent that
they related to meetings in the past and requested an impermissible advisory
opinion to the extent that they related to future meetings.  Both arguments
essentially question whether Kessling has raised a justiciable controversy. 
The first argument asserts that claims concerning past meetings are moot, and
the latter argument questions whether claims concerning future meetings have
ripened.  ATo constitute a justiciable controversy, there must
exist a real and substantial controversy involving genuine conflict of tangible
interests and not merely a theoretical dispute.@  Bonham State
Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995).  Whether a justiciable
controversy exists, and thus whether claims have become moot on the one hand
and whether they have ripened on the other, is a threshold question that
implicates subject‑matter jurisdiction.  See, e.g., Patterson v.
Planned Parenthood of Houston & Se. Tex., Inc., 971 S.W.2d 439, 442
(Tex. 1998) (discussing ripeness); City of Houston v. Clark, 252 S.W.3d
561, 568 (Tex. App.CHouston [14th Dist.] 2008, no pet.) (discussing
mootness).  AA case becomes moot if a controversy ceases to exist
or the parties lack a legally cognizable interest in the outcome.@  Allstate Ins.
Co. v. Hallman, 159 S.W.3d 640, 642 (Tex. 2005).  The doctrine of ripeness Aasks whether the
facts have developed sufficiently so that an injury has occurred or is likely
to occur, rather than being contingent or remote.@  Patterson,
971 S.W.2d at 442.








Appellees base their justiciability
arguments on the Austin Court of Appeals= analysis in Cornyn
v. City of Garland, 994 S.W.2d 258 (Tex. App.CAustin 1999, no
pet.).  In Cornyn, the trial court denied by way of summary judgment the
complainant=s requests for a declaratory judgment that prior city
counsel meeting notices were deficient and a permanent injunction and writ of
mandamus requiring full TOMA compliance in the future.  994 S.W.2d at 266.  The
Austin court affirmed, holding that the declaratory judgment claim was moot and
that the request for injunction and for writ of mandamus required an advisory
opinion (i.e., was not yet ripe for decision).  Id. at 267.[4] 
Other courts, however, including this one, have arrived at different
conclusions from those of the Cornyn court regarding the mootness of
prior TOMA violations and the ripeness of threatened future violations.

a.  Future Meetings

For reasons which will become apparent, we
begin by addressing the claims concerning threatened future violations.  In Harris
County Emergency Service District No. 1 v. Harris County Emergency Corps,
we upheld an injunction preventing the appellant governmental entity from
holding certain types of meetings in the future without proper notice.  999
S.W.2d 163, 171 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  As
authority, we cited section 551.142(a), which authorizes A[a]n interested
person . . . [to] bring an action by mandamus or injunction to stop, prevent,
or reverse a violation or threatened violation of the TOMA.@  Id.
(quoting 551.142(a)) (emphasis added).  We looked to a pattern of past improper
meeting notices to support an injunction against holding future meetings
without proper notice.








To avoid the justiciability challenges,
Kessling is only required to plead sufficient facts to support jurisdiction.  See
City of Waco v. Lopez, 259 S.W.3d 147, 150 (Tex. 2008).  Kessling=s pleadings are
sufficient to make a claim under Harris County Emergency in that she
explicitly alleged a pattern and practice of certain kinds of TOMA violations
and requested injunctive and mandamus relief to prevent future violations of
the same nature.  Consequently, the trial court erred in granting summary
judgment against Kessling=s claims concerning future meeting
notices.[5]

b.  Past Meetings

We now turn to Kessling=s claims with
regards to past violations.  In City of Farmers Branch v. Ramos, 235
S.W.3d 462 (Tex. App.CDallas 2007, no pet.), the Dallas Court of
Appeals also deviated from the Cornyn court=s conclusions.  In
Ramos, the complainant alleged that the city council had violated the
TOMA on specific instances when it passed certain ordinances, and the city
countered that questions concerning such alleged violations were rendered moot
because the ordinances in question had been subsequently repealed.  235 S.W.3d
at 468-69.  The court of appeals rejected the city=s position,
stating that: AIf a governmental body illegally deliberates and
decides an issue in closed session, repealing the action so that it can be
retaken in a later setting does not vindicate the very right protected by TOMA.
. . .  >Our citizens are
entitled to more than a result.  They are entitled not only to know what
government decides but to observe how and why every decision is reached.=@  Id. at 469-70
(quoting Acker v. Tex. Water Comm=n, 790 S.W.2d 299,
300 (Tex. 1990)).  The court then concluded that the complainant=s request for a
declaration of TOMA violations, coupled with a potential remedy involving
production of certified agenda from the illegally closed meetings, established
that the issue was not moot.  Id. at 470.








We agree with the Ramos court that
a TOMA violation is not rendered moot simply because it occurred in the past
but remains a live controversy insofar as it supports a future remedy. 
Kessling=s claims of past
TOMA violations and threatened future violations are, in fact, inextricably
intertwined.  The remedy that she requests based on past violations is the
prohibition (by mandamus or injunction) of future violations.  She attempts to
prove the likelihood of those future violations by demonstrating a pattern and
practice of violations in the past.  Thus, following Harris County Emergency
and Ramos, the controversy regarding past violations has not become
moot, and the controversy regarding future violations is ripe.  Consequently,
the trial court erred in granting summary judgment against Kessling=s TOMA claims on
these bases.  We sustain Kessling=s first issue.  It
is important to note, however, that our resolution of this issue does not mean
that Kessling ultimately has valid TOMA claims or that she has demonstrated a
pattern and practice of TOMA violations.  These questions were not raised by
appellees= motion.  We hold only that Kessling has sufficiently
pleaded her TOMA claims.

2.  TPIA Claims

In 1973, the Texas Legislature passed what
is now known as the TPIA.  See Act of June 14, 1973, 63rd Leg., R.S.,
ch. 424, '' 1, 14(d), 1973 Tex. Gen. Laws 1112, 1118; City of
Garland v. Dallas Morning News, 22 S.W.3d 351, 355 (Tex. 2000).  The
purpose of the TPIA is Ato provide public access >at all times to
complete information about the affairs of government and the official acts of
public officials and employees.=@  City of
Garland, 22 S.W.3d at 355-56 (quoting Tex. Gov=t Code ' 552.001).  In
furtherance of this policy, a governmental body must promptly produce requested
public information.  See Tex. Gov=t Code ' 552.221.  The
TPIA defines Apublic information@ as information
that Aunder a law or
ordinance or in connection with the transaction of official business, is
collected, assembled, or maintained by a governmental body; or for a
governmental body and the governmental body owns the information or has a right
of access to it.@  Id. ' 552.021.  The
TPIA also exempts certain categories of information from disclosure.  See id.
'' 552.101‑.123. 
In order to claim that particular information falls within an exemption, when
the issue has not been previously determined, a governmental body must request
an Attorney General=s opinion on the matter.  See id.
' 552.301.  If the
governmental body fails to do so, the information is presumed to be public.  Id.
' 552.302.








As stated above, in her petition, Kessling
alleged that appellees had violated the TPIA by refusing to either provide
particular information or request an attorney general=s opinion on the
matter.  She further charged that appellees had failed to timely or properly
provide other requested information.  As relief, Kessling requested a
declaratory judgment that appellees had violated the TPIA, as well as
injunctive relief and a writ of mandamus requiring appellees to comply with
TPIA provisions and timely disclose the requested information.  In their
motion, appellees raised two grounds for summary judgment on Kessling=s TPIA claims. 
First, they argued that under TPIA section 552.3215, Kessling was not permitted
to file her claims seeking declaratory judgment and injunctive relief directly
with a court but first had to file a complaint with the local district attorney
or county attorney.  Tex. Gov=t Code ' 552.3215. 
Second, appellees argued, again based on the Cornyn case, that Kessling=s TPIA claims
regarding past requests had all become moot and that her claims regarding potential
future requests sought an impermissible advisory opinion.  We will address each
ground in turn.

a.  Section 552.3215








As a matter of statutory interpretation,
we consider the question of whether section 552.3215 prevents Kessling from
filing her declaratory judgment and injunctive claims directly with a court
under a de novo standard.  City of Rockwall v. Hughes, 246 S.W.3d 621,
625 (Tex. 2008).  When a statute=s language is
clear and unambiguous, we need not resort to rules of construction or other
extrinsic aids.  Id. at 626.  In enacting TPIA section 552.3215, the
Texas Legislature established a scheme through which TPIA complainants can file
a complaint with a district attorney or county attorney, who then must assess
whether a violation has occurred and determine whether to pursue the matter by
first notifying the governmental entity and, if not remedied, then filing an
action for declaratory judgment or injunctive relief.  Tex. Gov=t Code ' 552.3215. 
Subsection (a)(1) defines a A[c]omplainant@ as Aa person who
claims to be the victim of a violation of [the TPIA].@  Id. ' 552.3215(a)(1). 
Subsection (b) states that A[a]n action for a declaratory judgment or
injunctive relief may be brought in accordance with this section against a
governmental body that violates [the TPIA].@  Id. ' 552.3215(b). 
Subsection (c) permits a district or county attorney to bring the action in the
name of the state, and subsection (e) states that a Acomplainant may
file a complaint@ with the county or district attorney.  Id.
' 552.3215(c),
(e).  Other sections guide the district or county attorney=s decision-making
process, require notification to the governmental entity before suit can be
filed, and provide complainants with an additional opportunity to seek redress
with the Texas Attorney General should the local district or county attorney
decline to pursue the matter.  Id. ' 552.3215(g), (h),
(i), (j).








Most significantly for our purposes, the
final subsection of the provision, subsection (k), states that A[a]n action
authorized by this section is in addition to any other civil, administrative,
or criminal action provided by this chapter or another law.@  Id. ' 552.3215(k). 
Prior to enactment of section 552.3215, it was clear that TPIA requestors could
seek relief from a governmental entity=s refusal to
produce information by directly filing a declaratory judgment action under the
UDJA against the entity.  See City of Garland, 22 S.W.3d at 357-58
(collecting cases where TPIA requestors have sued for declaratory judgment as
the sole remedy, as well as cases where requestors sought declaratory judgment
in addition to mandamus relief, and holding that the UDJA supports declaratory
judgment actions in the TPIA context); Dominguez v. Gilbert, 48 S.W.3d
789, 796 (Tex. App.CAustin 2001, no pet.) (holding TPIA
requestor had standing to seek declaratory judgment under the UDJA).  Appellees
argue that the enactment of section 552.3215 eliminated this previously
available avenue for redress.  However, given that nothing in section 552.3215
expressly or implicitly restricts the preexisting right of action, and given
that subsection (k) expressly states that an action authorized therein is Ain addition to@ any other type of
action available, we hold that section 552.3215 does not prevent a complainant
from directly filing a TPIA declaratory judgment claim.[6] 
In effect, section 552.3215 gives a complainant an avenue for seeking redress
which does not require the complainant to incur the expense of filing a lawsuit
on his or her own behalf:  a lawsuit undertaken by, and in the name of, the
state.  See Tex. Gov=t Code ' 552.3215(c). 
Nothing in section 552.3215 suggests that a complainant cannot file a lawsuit
in his or her own behalf, name, and expense.  The trial court erred to the
extent it held otherwise.[7]

b.  Justiciability

Next, we turn to appellees= justiciability
contentions, i.e., that Kessling=s TPIA claims
regarding past requests had all become moot and that her claims regarding
potential future requests were not yet ripe.  As discussed above, A[t]o constitute a
justiciable controversy, there must exist a real and substantial controversy
involving genuine conflict of tangible interests and not merely a theoretical
dispute.@  Bonham State
Bank, 907 S.W.2d at 467.  A case is considered moot when either a
controversy has ceased to exist or the parties lack a legally cognizable
interest, Hallman, 159 S.W.3d at 642, and a controversy does not ripen
until an injury has occurred or is likely to occur, Patterson, 971
S.W.2d at 442.  We begin by noting that Kessling=s TPIA violation
claims can be grouped into two categories:  (1) claims that certain requests
have gone unfulfilled, and (2) claims that although other requests have been
fulfilled, something improper occurred regarding how they were fulfilled.[8]








Claims that certain requests have gone
unfulfilled are neither moot nor unripe.  Because there is a live controversy
regarding these claims, the trial court possesses subject matter jurisdiction
to resolve the controversy.  See Patterson, 971 S.W.2d at 442.  Although
in their appellate briefing, appellees further argue that (1) Kessling requested
an overbroad order, (2) Kessling failed to plead her claims with sufficient
specificity, and (3) FISD has not refused to provide any existing documents and
cannot be required to create documents to fulfill TPIA requests, appellees did
not raise these points as grounds for summary judgment below.  Accordingly, we
cannot affirm the judgment on these bases.  See Knott, 128 S.W.3d at 216.  Summary judgment was improvidently
granted with regard to Kessling=s claims of unfulfilled TPIA requests.








Regarding her claims concerning requests
that were ultimately fulfilled, Kessling does not argue in her briefing to this
court that she is entitled to seek mandamus or injunctive relief, as she did in
connection with her TOMA claims, instructing appellees to follow the law in the
future.  She neither argues that TPIA allows for such relief nor seeks any
other injunctive or other affirmative relief as her requests have been
fulfilled.  Instead, with regard to her fulfilled requests, she appears to seek
only a declaration that violations have occurred in the past in connection with
those requests.  In the absence of a request for injunctive or other
affirmative relief, a declaration that past violations have occurred would have
no impact on the rights of the parties.  See Speer v. Presbyterian Children=s Home & Serv.
Agency, 847 S.W.2d 227, 229 (Tex. 1993) (citing McKie v. Bullock, 491
S.W.2d 659, 660 (Tex. 1973), for the proposition that Awhen the action
sought to be enjoined is accomplished and >suitable coercive
relief= becomes
impossible, it is improper to grant declaratory relief@); City of
Shoreacres v. Tex. Comm=n of Envtl.
Quality, 166 S.W.3d 825, 838-39 (Tex. App.CAustin 2005, no
pet.) (holding that party=s request for declaratory judgment did not
change the fact that no justiciable controversy existed because the court could
grant no relief having a practical legal effect on the controversy).  Kessling=s claims regarding
fulfilled TPIA requests are therefore moot.  Consequently, the trial court did
not err in dismissing these claims.[9]

In short, the trial court erred in
dismissing Kessling=s TOMA claims as well as her TPIA claims
regarding requests that have allegedly gone unfulfilled, but the court has not
been shown to have erred in dismissing Kessling=s TPIA claims
concerning requests which were ultimately fulfilled.  Accordingly, we sustain
Kessling=s first issue in
part and overrule it in part.

B.  Plea to Jurisdiction








In her second issue, Kessling contends
that the trial court erred in granting appellees= plea to the
jurisdiction and, thus, in dismissing her Education Code claims for want of
jurisdiction.  We review a trial court=s grant of a plea
to the jurisdiction under a de novo standard.  Lopez, 259 S.W.3d at
150.  The focus of such review is on Awhether facts have
been alleged that affirmatively demonstrate jurisdiction in the trial court.@  Id.  In
making this determination, we construe pleadings liberally in favor of the
plaintiff.  Id.  Furthermore, we may not assess the merit of the
plaintiff=s claims.  County of Cameron v. Brown, 80
S.W.3d 549, 555 (Tex. 2002).  If a fact question regarding jurisdiction exists,
the plea should not have been granted; however, if pleadings or evidence
affirmatively negate a jurisdictional fact, the plea may have been properly
granted even in the absence of an opportunity to amend.  See Lopez, 259
S.W.3d at 150.  When a plea to the jurisdiction challenges the plaintiff=s pleadings and
not the existence of jurisdictional facts, we assume the facts pleaded to be true. 
See Westbrook v. Penley, 231 S.W.3d 389, 405 (Tex. 2007).

In her petition, Kessling claimed that
appellees violated the Education Code by failing to follow certain accounting
practices and failing to generate certain reports required under the code and
associated administrative rules.  See Tex. Educ. Code '' 39.023, 44.002,
44.003, 44.007, 44.0071; 19 Tex. Admin. Code '' 61.1025 (2001,
2005) (Tex. Educ. Agency, Public Education Information Management System Data
and Reporting), 109.1 (1996, 2002) (Tex. Educ. Agency, Financial Accounting). 
Kessling requested a declaratory judgment and injunctive and mandamus relief to
require appellees to adopt an appropriate accounting system which conforms to
the Education Code requirements.  She further claimed that appellees= failure to
generate required accounting reports defeated her TPIA requests for such
reports because, under the TPIA, a governmental body can be required to release
only information in existence and cannot be forced to create the requested
information.  See A&T Consultants, Inc. v. Sharp, 904 S.W.2d 668,
676 (Tex. 1995).  In their plea, appellees asserted governmental immunity. 
They also asserted that Kessling lacked standing because (1) the Education Code
does not provide for a private right of action on these accounting matters, and
(2) Kessling failed to allege a distinct injury.








We begin by addressing the standing
grounds in the plea to the jurisdiction.  A party seeking affirmative relief
must have standing to invoke a court=s subject matter
jurisdiction.  DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex.
2008).  AFor standing, a
plaintiff must be personally aggrieved; his alleged injury must be concrete and
particularized, actual or imminent, not hypothetical.@  Id. at
304-05.  If the plaintiff does not allege real and personal injury to himself
or herself, it is irrelevant whether the defendant acted improperly.  See id.
at 305.

Appellees are correct, and Kessling does not
dispute, that the Education Code does not contain any provision authorizing a
private right of action for complaints concerning a school district=s failure to
follow required accounting practices or generate required financial reports. 
To the contrary, the provisions Kessling relies upon give oversight on these
matters to other governmental actors.  See Tex. Educ. Code '' 39.023
(Commissioner of Education), 44.002 (State Board of Education), 44.003
(district superintendents), 44.007 (State Board), 44.0071 (Commissioner); 19
Tex. Admin. Code '' 61.1025 (Commissioner and groups
appointed by the Commissioner), 109.1 (Commissioner, State Board, and state
auditor).[10]

Kessling instead argues that she has standing
to compel, through mandamus, a public official to perform a ministerial duty.  See
Blum v. Lanier, 997 S.W.2d 259, 263 (Tex. 1999).[11] 
She further contends that she has standing to Aseek declaratory
relief against state officials who allegedly act without legal or statutory
authority.@  See Tex. Natural Res. Conservation Comm=n v. IT‑Davy, 74 S.W.3d 849,
855 (Tex. 2002).  Such arguments, however, do not obviate the prerequisite for
standing of a particularized injury.  See Inman, 252 S.W.3d at 304-05. 
Indeed, the Texas Supreme Court has expressly noted that in order to have
standing for a declaratory judgment claim, a member of the public must allege Aa particularized
injury distinct from that suffered by the general public.@  Bland I.S.D. v.
Blue,








 34 S.W.3d 547, 555-56 (Tex. 2000).[12] 
Kessling contends that appellees= failure to follow
mandatory financial guidelines and prepare mandatory financial reports results
in her failure to:  (1) get her TPIA requests for those reports fulfilled, and
(2) properly review FISD=s financial activities by making
productive TPIA requests.  In other words, Kessling maintains that appellees= refusal to follow
the dictates of the Education Code defeats her right to access to information
under the TPIA.  Kessling=s argument, however, is defeated by the
very statutes upon which she relies.  As discussed above, under the Education
Code provisions, she has no private right of enforcement, see Texas
Education Code '' 39.023, 44.002, 44.003, 44.007, 44.0071;
under the TPIA, she has no right to require a governmental entity to create a
document that it does not already possess, see Sharp, 904 S.W.2d at
676.  Because Kessling has no right to require appellees to meet the dictates
of the Education Code provisions either through the TPIA or the Education Code
itself, she does not have a particularized injury from the appellees= alleged failure
to do so.  In short, she has no standing to make these claims.  See Inman,
252 S.W.3d at 304-05.  To the extent that Kessling wishes to complain generally
about the logic or fairness, as opposed to the constitutionality, of the
statutory schemes, she should address the Texas Legislature.  The trial court
did not err in dismissing Kessling=s Education Code
claims for lack of standing.  We overrule Kessling=s second issue.

III.  Cross-Appeal for Attorney=s Fees








In the sole issue in their cross-appeal,
appellees/cross-appellants contend that the trial court erred in declining to
award them attorney=s fees either under the UDJA or the Education
Code.  Under the UDJA, a trial court may award costs and reasonable and
necessary attorney=s fees as are equitable and just.  Tex.
Civ. Prac. & Rem. Code ' 37.004.  A court may conclude that it is
not equitable or just to award even reasonable and necessary fees.  Bocquet
v. Herring, 972 S.W.2d 19, 21 (Tex. 1998).  Under the Education Code, a
trial court may award attorney=s fees to a defendant if (1) the suit was
dismissed or judgment rendered in favor of the independent school district or
school district employee, and (2) the court finds that the suit was frivolous,
unreasonable, and without foundation.  Tex. Educ. Code '' 11.161, 22.055. 
We review the court=s refusal to award fees under either
statute under an abuse of discretion standard.  Bocquet, 972 S.W.2d at
21 (UDJA); Loeffler v. Lytle I.S.D., 211 S.W.3d 331, 350 (Tex. App.CSan Antonio 2006,
pet. denied) (Education Code).

Because Kessling was wholly successful on
her appeal of the summary judgment against her TOMA claims and at least
partially successful on her TPIA claims, we will consider only her Education
Code claims in addressing appellees= cross-appeal. 
While Kessling=s Education Code claims are ultimately meritless, we
cannot say that they were frivolous, unreasonable, and without foundation.  The
arguments were novel and were grounded in statutory and case law, even though,
in the end, they were incorrect.  Accordingly, the trial court did not abuse
its discretion in declining to award attorney=s fees under the
Education Code.  See Tex. Educ. Code '' 11.161, 22.055. 
Similarly, given that Kessling successfully appealed judgment against several
of her UDJA based claims, and the claims on which she was unsuccessful were
nonetheless not frivolous or without foundation in the law, we cannot say that
the trial court erred in refusing to find that a grant of attorney=s fees would be
equitable and just.  Accordingly, the trial court did not abuse its discretion
in declining to award fees under the UDJA.  We overrule appellees= sole cross-appeal
issue.

IV.  Conclusion








In summary, the trial court erred in
granting summary judgment against Kessling=s TOMA claims and
against her claims of unfulfilled TPIA requests.  The trial court properly
granted judgment against Kessling=s claims
concerning TPIA requests that have been met.  The court properly dismissed her
Education Code claims for want of jurisdiction.  The trial court did not abuse
its discretion in declining to award attorney=s fees to
appellees.  We remand to the trial court for further consideration of Kessling=s TOMA claims and
her claims of unfulfilled TPIA requests.

 

 

 

/s/      Adele
Hedges

Chief
Justice

 

 

 

 

 

Panel consists of Chief Justice Hedges and Justices Yates and Frost.
(Frost, J. Dissenting)









[1]  Kessling filed her third amended petition after
appellees= motion for summary judgment was filed and after the
deadline passed for amendment.  The trial court expressly granted leave to file
the third amended petition during an oral hearing before final judgment was
entered.  The third amended petition was therefore the live petition at the
time of judgment.





[2]  In her special exceptions, Hanks provided eleven
paragraphs of detailed exceptions, challenging specific paragraphs of Kessling=s petition.  The description in the text above is
intended solely as a brief synopsis of the assertions.





[3]  For consistency=s
sake, we adopt the parties= labeling of
the TOMA and TPIA discussions as pertaining to the grant of summary judgment
and their labeling of the Education Code discussion as pertaining to the grant
of the plea to the jurisdiction.  Such labeling is not intended to
substantively impact the analysis.





[4]  Regarding past acts, the Austin Court also rejected
the complainant=s assertion of an exception to the mootness doctrine,
which would permit judicial review of acts that are capable of repetition but
evade review.  Id. (quoting 551.142(a)); see also Williams v. Lara,
52 S.W.3d 171, 184-85 (Tex. 2001) (discussing the Acapable of repetition, yet evading review@ exception to the mootness doctrine).  This mootness
exception is not raised in the present appeal.





[5]  Appellees are misguided in their attempt to
discredit any precedential value of Harris County Emergency based on
factual and procedural distinctions between that case and the one currently
before us.





[6]  There is, additionally, no indication in the
legislative history, cited by appellees or discovered by our research, that
section 552.3215 was intended to replace or extinguish any existing rights of
action.  To the contrary, the legislative history is replete with comments akin
to subsection (k), i.e., that the newly created action is in addition to
any other available actions.





[7]  We additionally note that even if appellees were
correct in their interpretation of section 552.3215, the section would still
not have been grounds for dismissing all of Kessling=s TPIA claims.  Kessling additionally sought a writ of
mandamus, which is expressly permitted under TPIA section 552.321 when a
governmental entity refuses to request an attorney general=s opinion or to produce material previously determined
to be public information.  Tex. Gov=t Code ' 552.321.





[8]  Among her claims that certain TPIA requests have
gone unfulfilled, Kessling asserts that (1) on November 17, 2003, she requested
documents relating to September, October, and November board meetings, but she
did not receive coded payroll statements; (2) she has not received all of the
check registers that she requested on November 17, 2003; (3) FISD has failed to
respond to a February 23, 2005, request for APayment
of Bills@ and AFinancial
Reports@; (4) FISD has failed to provide a Alist of educators@
she requested on November 14, 2005; and (5) FISD failed to provide a signature
authority card for a bank account, also requested on November 14, 2005.  Among
her claims regarding requests which were ultimately fulfilled, Kessling asserts
that FISD (1) failed to provide Aprompt
access@ to board agenda and meeting minutes as well as
banking documents she requested on February 28, 2004; (2) treated her
differently than district employees and members of the press by not providing
her Awithout charge and without request@ a board agenda book; (3) failed to make certain bank
statements available until Kessling made a second request; (4) admitted that ATax Collector Bank Statements@ had been omitted from the response to a prior
request; (5) produced AQuarterly Investment Reports@ untimely; and (6) failed to produce requested ALetters to Management,@ which Kessling subsequently obtained from another source.





[9]  Obviously, we disagree with the dissent=s conclusion that Kessling briefed the issue of
whether the TPIA affords her the right to seek  mandamus or injunctive relief
instructing appellees to follow the TPIA in the future.  Even if her briefing
could be liberally construed as having raised the issue, she certainly does not
offer any argument or authority specifically on this issue.  See Tex. R.
Civ. P. 38.1(i) (AThe brief must contain a clear and concise argument
for the contentions made, with appropriate citations to authority and to the
record.@).

For these reasons, we also
disagree with the dissent=s additional conclusion that the trial court erred in
granting summary judgment against Kessling=s
claims regarding fulfilled TPIA requests.  The dissent appears to reach its
conclusion based on the majority=s
analysis of Kessling=s similar TOMA claims.  However, it is far from clear
whether the TPIA and interpretive case law supports the dissent=s conclusion that this issue should be analyzed the
same as it is under the TOMA.  We express no opinion as to whether a mandamus
or injunction requiring appellees to follow the TPIA in the future would be
proper under the law had such issue been briefed.

The dissent
suggests that we are addressing the merits of   Kessling=s claims regarding fulfilled TPIA requests.  To the contrary, as explained in the preceding text,
we find that those claims are moot and thus the trial court, and this court,
lacks subject-matter jurisdiction over those claims.  See, e.g., Labrado v.
County of El Paso, 132 S.W.3d 581, 589 (Tex. App.CEl Paso 2004, no pet.).





[10]  As appellees point out, other sections of the
Education Code also provide the Texas Education Agency (TEA), the Commissioner
of Education, and the State Board of Education with general oversight of school
districts= financial reporting.  See Tex. Educ. Code '' 7.021(b)(13) (mandating the TEA Areview school district budgets, audit reports, and
other fiscal reports@); 7.055(b)(36) (requiring the commissioner to report
annually on Athe status of school district fiscal management@); 7.102 (requiring the State Board to adopt rules
concerning district budgets and audits of financial accounts).





[11]  Kessling contends that having the reports required
by the Education Code prepared is a ministerial act by a public official. 
Kessling acknowledges that the actual preparation of the reports may require an
accountant=s discretion but argues that having the reports
prepared is a ministerial not discretionary function because it is mandated by
the code.





[12]  One exception to the rule requiring a Aparticularized injury@ applies when a taxpayer alleges an illegal expenditure of public
funds.  Bland I.S.D., 34 S.W.3d at 556.  Kessling does not rely upon
this exception in the present case.