**Affirmed and Majority and Concurring Opinions filed August 21, 2025.**



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-24-00081-CV

---

### CITY OF DALLAS, Appellant

### V.

### KEN PAXTON, ATTORNEY GENERAL OF TEXAS, AND THE DALLAS MORNING NEWS, INC., Appellees

---

**On Appeal from the 353rd District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-002331**

---

### OPINION

This appeal arises from a Texas Public Information Act (PIA) dispute between the City of Dallas and the Dallas Morning News.

A Dallas Morning News employee submitted a PIA request to the City for information related to the City's Low Income Housing Tax Credit Program. The City had already provided this information to the United States Department of

Housing and Urban Development (HUD) when HUD had requested that information pursuant to its investigation of allegedly discriminatory housing practices.

The City submitted Dallas Morning News's request to the Attorney General in a letter requesting a decision on whether the information was excepted from public disclosure pursuant to the PIA's litigation exception. Although the City's letter mentioned HUD's ongoing investigation, it did not mention Daryl Baker—the individual whose allegations of discrimination sparked HUD's investigation—as an actual or potential litigant. The Attorney General determined that some of the information requested by Dallas Morning News was not subject to the litigation exception because the City had already disclosed the requested information to HUD. The City disagreed with that determination and filed suit against the Attorney General. Dallas Morning News intervened, seeking a writ of mandamus to compel the City to produce the documents that it had requested.

The trial court granted summary judgment in favor of Dallas Morning News, denied the City's motion, and awarded fees to Dallas Morning News. The City challenges the trial court's grant of Dallas Morning News's summary judgment motion, the denial of its own motion, and the award of attorney fees. We affirm.

## I.

### A.  Texas's Public Information Act

[I]t is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees.

Tex. Gov't Code § 552.001(a).

Modeled after the federal Freedom of Information Act, Texas's Public Information Act is codified in Chapter 552 of the Texas Government Code. *See*

2

*generally* Tex. Gov't Code ch. 552. The PIA emphasizes that access to public information is fundamental to our form of representative government:

> The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

*Id.* § 552.001(a). We construe Chapter 552 "liberally in favor of granting a request for information." *Id.* § 552.001(b).

The PIA accommodates the inherent tension between the public's need for disclosure of public information with the interests of governmental bodies in withholding certain information to protect legally recognized interests. It does so in part through Subchapter C, which contains exceptions to the general rule of disclosure. *Univ. of Tex. at Austin v. GateHouse Media Tex. Holdings II, Inc.*, 711 S.W.3d 655, 657–58 (Tex. 2024); *see* Tex. Gov't Code §§ 552.101–.163. One of those exceptions—commonly termed the "litigation exception"—allows a governmental body like the City to withhold public information from disclosure "if it is information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party." Tex. Gov't Code § 552.103(a).

In most cases, a governmental body may not unilaterally withhold requested information. Rather, the governmental body "must" ask the Attorney General to decide whether the information sought falls within a Subchapter C exception. *See id.* § 552.301(a). That request must include, among other things, "written comments stating the reasons why the stated exceptions apply that would allow the information to be withheld" along with a "copy of the specific information requested" or, if a "voluminous amount of information was requested," "representative samples of the information." *Id.* § 552.301(e)(1)(A), –(D). The specific information or representative samples must be labeled to "indicate which exceptions apply to which

parts of the copy." *Id*. § 552.301(e)(2).

The PIA places the onus on the governmental body to provide the Attorney General with the information needed to make the determination. *Id.* § 552.303(a) ("A governmental body that requests an attorney general decision under this subchapter shall supply to the attorney general, in accordance with Section 522.301, the specific information requested."). If the governmental body fails to comply with the procedure outlined in Section 552.301, the information is "presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information." *Id.* § 552.302. Following a determination that the information is not excepted from disclosure, the governmental body must disclose the information unless it files suit to challenge that determination. *Id.* § 552.324 (authorizing governmental body to file suit to challenge Attorney General's determination).

Because disclosure of public information is the default under the PIA's policy, the PIA confines litigation over exceptions to only those exceptions that are "properly raised before the attorney general":

> Except as provided by Subsection (b), the only exceptions to required disclosure within Subchapter C that a governmental body may raise in a suit filed under this chapter are exceptions that the governmental body properly raised before the attorney general in connection with its request for a decision regarding the matter under Subchapter G.

Tex. Gov't Code § 552.326(a).

And to further this policy objective, the PIA waives governmental immunity to allow access to this information. Requesters can sue the governmental body for a writ of mandamus to compel disclosure if the governmental body refuses to supply information that the Attorney General determined is not excepted from disclosure. *Id.* § 552.321(a). In such actions, the court "shall assess costs of litigation and

4

reasonable attorney fees incurred by a plaintiff who substantially prevails," unless the governmental body acted in "reasonable reliance" on a written decision of the Attorney General, a court order or judgment applicable to the governmental body, or a published appellate court opinion. *Id.* § 552.323(a).

## B.    HUD Complaint

In February 2022, the United States Department of Housing and Urban Development (HUD) notified the City that it had a received a "formal complaint" of housing discrimination against the City. Attached to the letter was a copy of the complaint.

The complainant, an African American Dallas resident named Darryl Baker, alleged that the City discriminated against him on the basis of race, national origin and color by approving and funding low-income housing projects in his neighborhood. Baker also alleged that the City abused its veto power to unlawfully steer a disproportionate number of low-income housing projects to predominantly minority areas, encouraging racial segregation in violation of federal law.

HUD informed the City that it was investigating Baker's complaint, but "ha[d] made no determinations whether the complaint against you has merit." HUD explained that if its investigation revealed "reasonable cause" that the City had engaged in "unlawful discriminatory housing practices," HUD was required to issue a charge.[1] The investigation is not a final adjudication, but "information derived from the investigation and any final investigative report" would be shared with Baker. *See* 42 U.S.C. § 3610(d)(2). In the event that HUD issued a charge, it would be required to litigate the City's liability through a formal proceeding. *See* 42 U.S.C.

---

[1] A "charge" under the Fair Housing and Discrimination Act is a suit brought by HUD against a governmental agency for violations of federal law. *See* 42 U.S.C. §§ 3610(g)(2).

§ 3612(f).

HUD also informed the City that Baker retained an independent right to pursue a claim against the City "in an appropriate federal, state or local court." Four months after HUD notified the City of the complaint, HUD requested extensive information (Information) from the City, including:

> A copy of Housing and Neighborhood Revitalization (HNR) staff' recommendations to the City Council of pre-selected LIHTC applications for consideration and approval covering the years 2018-2021[;]
>
> A list of all LIHTC applications submitted to the City from January 2018 to December 2021, listing proposed project name, total low-income units, program type (4% or 9%), construction type, population served, census tract, tract minority percent, tract median family income, R/ECAP status, city council district, HRN recommendation, city council hearing date, city council resolution (support, no objection, denial), reason for denial (when applicable), noncompliant factor(s) with TDHCA housing de-concentration factors, status of application. Please provide web address if this information is electronically and publicly available. Include the developers who have applied to the LIHTC program since January 2018, listing the applicant's name, contact information, and the proposed area for the project(s)[;] and
>
> A copy of review checklists and/or fair housing assessment tools the Office of Fair Housing and Human Rights completed for LIHTC applications from January 2018 to December 2021 and any written recommendations resulted from those reviews.

HUD's request also stated:

> At this time HUD is requesting this information voluntarily pursuant to 24 C.F.R. 103.215. Please be reminded that if we are unable to obtain the information cooperatively, Section 3611(a) of the Fair Housing Act authorizes the Secretary of HUD to issue subpoenas and order discovery in aid of investigations and hearings.

The City provided all of the requested Information to HUD.

## C. The City's Request for a Determination from the Attorney General

While HUD's investigation was ongoing, an employee of Dallas Morning News filed an open records request for the Information. The City responded that it anticipated that some of the Information was excepted from disclosure and had requested a decision from the Attorney General.

On January 25, 2023, the City sent a letter (January 25 Letter) to the Attorney General requesting a decision on whether it could withhold the Information from public disclosure. In the January 25 Letter, the City asserted that the Information was exempt from disclosure pursuant to litigation exception incorporated into the PIA:

> The requested information is central to active litigation involving the City. An investigation involving Housing & Urban Development ("HUD") relating to the city approval of Low Income Housing tax Credit ("LIHTC") projects is still ongoing. A copy of the litigation records, are enclosed as Exhibit C. . . .

> Attached and marked as Exhibit B is responsive information exempt from required disclosure under Section 552.103 of the Act. The requested information is the subject of pending litigation as it consists of internal communications and City records regarding the events relevant to the lawsuit and allegations raised against the city. The enclosed information is of the kind that would properly be sought in discovery during litigation and has not been obtained by the opposing party to the litigation. For these reasons, the City seeks to withhold the enclosed information from the disclosure.

The January 25 Letter did not name Darryl Baker or mention him as a potential litigant.

Reviewing the City's submission, the Attorney General noted that the City had submitted voluminous records but had not identified a "representative sample" to which the litigation exception applied. Making its own representative sample, the Attorney General determined that much of the Information was public records that

could not be withheld under any exception, such as city resolutions, meeting minutes, agendas from public meetings and information regarding expenditure of public funds. All of the Information had been disclosed to HUD.

The Attorney General went on to decide that because the Information had already been provided to HUD, the opposing party in the pending litigation, the City no longer had an interest in withholding it. Except for certain identifying information, namely insurance policy numbers and individual email addresses, the Attorney General determined that the City "must release the remaining information." Like the City's January 25 Letter that prompted the Attorney General's review, the letter ruling did not mention Baker.

## D.    Trial Court Proceedings

The City filed suit against the Attorney General for a declaration that "some of the information is excepted from public disclosure under Government Code section 552.103 . . . ." The City's two-and-a-half-page petition did not mention Darryl Baker or the potential for litigation involving him.

Dallas Morning News intervened, seeking a writ of mandamus to compel the City to produce the Information. The City and Dallas Morning News filed cross-motions for traditional summary judgment.[2] Each took the position that there was no genuine dispute as to material facts.

Dallas Morning News moved for summary judgment on the pleadings on the basis that the City had failed to establish, legally or with evidence, that the

---

[2] The Attorney General also moved for summary judgment on the ground that the City had not shown a compelling reason to withhold the information at issue based on the disclosure of information to HUD. The Attorney General later filed a response to the City's summary judgment motion asserting—based on "new evidence"—that the litigation exception would apply if the City presented evidence that it had not disclosed the information to Darryl Baker. The trial court denied the Attorney General's motion, and the Attorney General has not appealed that denial.

Information was exempt from public disclosure. In support, Dallas Morning News offered as evidence the City's initial disclosures and admissions, in which the City acknowledged providing the requested information to HUD; the City's January 25 Letter request for a determination by the Attorney General; and the Attorney General's letter ruling that the Information was not exempt from disclosure. Dallas Morning News also sought costs and attorney fees under Section 552.323 of the Government Code.

The City also moved for summary judgment on the pleadings and presented two issues to the trial court: (1) whether the Information relates to reasonably anticipated litigation to which the City is or may be a party, and (2) whether the City has lost its discovery interest in the Information by providing it to HUD when the City has not released the Information to the opposing party in the anticipated litigation.

In support, the City submitted two affidavits, including from assistant city attorney Kathleen Fones. Fones testified via affidavit that she was a custodian of record for the City and as counsel for the City in the HUD investigation had personal knowledge of each of the exhibits attached to her affidavit. She testified:

> [T]he information in Exhibit A consists of internal communications and City records regarding the events relevant to Baker's complaint against the City and is of the kind that would properly be sought in discovery during litigation. The information in Exhibit A has not been disclosed to Darryl Baker, the complainant in the HUD investigation.

Dallas Morning News responded, asserting that the City had waived its argument related to anticipated litigation with Baker by not presenting it first to the Attorney General, as required by Texas Government Code Section 552.326, and further objected to statements in Fones's affidavit exhibits as inadmissible hearsay: "specifically any statement or implication that Darryl Baker 'retained counsel' or

9

submitted a complaint 'with the assistance of counsel,' when offered for their truth, constitute[s] hearsay." The trial court sustained the objections and ordered "those portions of Fones' affidavit which purport to testify that Darryl Baker 'retained counsel' or submitted a complaint 'with the assistance of counsel' are stricken and not considered for purposes of the pending Motions for Summary Judgment."

Ultimately, the trial court granted Dallas Morning News's summary judgment motion and denied the City's motion. The court found no genuine issue of material fact and that, as a matter of law, the Information was not exempt from public disclosure and had to be released to Dallas Morning News. After a hearing, the trial court awarded Dallas Morning News $53,585.41 in attorney fees. This appeal followed.

## II.

We review the trial court's cross-summary judgment rulings *de novo*. *Hotze v. Turner*, 672 S.W.3d 380, 385 (Tex. 2023). The trial court may grant traditional summary judgment only if the pleadings and any evidence in support of the motions demonstrate that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." Tex. R. Civ. P. 166a(c); *see City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356–57 (Tex. 2000).

A movant seeking traditional summary judgment must prove all essential elements of its cause of action. *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021). On cross-motions for summary judgment, each movant bears the burden of establishing its entitlement to judgment as a matter of law. *City of Garland*, 22 S.W.3d at 356–57. We review all the summary judgment evidence, determine all questions presented and render the judgment the trial court should have rendered. *Id.* We take as true all evidence favorable to the nonmovant, indulge every reasonable

10

inference and resolve any doubts in the non-movant's favor. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). If the trial court's order does not specify the grounds relied upon, we must affirm if any of the theories advanced are meritorious. *Tex. Workers' Comp. Comm'n v. Patient Advocs. of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

This case requires us to construe the meaning of the Texas Public Information Act. "The Act is to be liberally construed in favor of granting requests for information." *Univ. of Tex. Sys. v. Franklin Ctr. for Gov't & Pub. Integrity*, 675 S.W.3d 273, 279 (Tex. 2023); *see* Tex. Gov't Code § 552.001(b). The question whether an exception to disclosure applies is a question of law. *See A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 674 (Tex. 1995).

## III.

The City raises six issues on appeal which we consolidate to three for purposes of our analysis. In its first and second issues, the City argues that the trial court erred in granting Dallas Morning News's motion for summary judgment. In its third, fourth, and fifth issues, the City argues that the trial court erred in denying its motion for summary judgment. Finally, in its sixth issue, the City argues that the trial court abused its discretion in awarding Dallas Morning News attorney fees.

### A. The City Waived the Litigation Exception by Failing to Properly Raise it to the Attorney General.

In two issues, the City contends that Dallas Morning News did not satisfy its summary judgment burden of negating an essential element of the City's claim that the information at issue is excepted from disclosure under the PIA's litigation exception. According to the City, the undisputed evidence establishes that the City never produced the information to Baker, the complainant in the HUD investigation. Therefore, the City continues to have a discovery interest in the information at issue,

11

precluding a grant of summary judgment for Dallas Morning News.

Dallas Morning News responds that it met its burden by moving for summary judgment based on the information that the City actually submitted to the Attorney General in its January 25 Letter. By omitting any mention of Baker or potential litigation involving him, the City failed to "properly raise" the litigation exception and was barred from asserting a discovery interest in any potential litigation with Baker. *See* Tex. Gov't Code § 552.326(a). The City argues that there is no waiver and the trial court was free to consider any evidence pertaining to Baker.

### 1.    *The City's Representations to the Attorney General*

We begin by analyzing whether the City's January 25 Letter alerted the Attorney General that Baker was a litigant or a potential party to litigation. In its brief, the City argues that

> On January 25, 2023, the City sent the Attorney General the information at issue, along with a letter explaining the City's assertion that the litigation exception excepted the information at issue from disclosure. (CR:149-50, 159-60.) Specifically, the City explained that HUD's investigation was ongoing and that the information at issue "is of the kind that would properly be sought in discovery during the [prospective] litigation and has not been obtained by the opposing party to the litigation [Baker]." (CR:160.)

The City acknowledges that the bracketed words were not in the letter that the City sent to the Attorney General. The January 25 Letter mentioned only the current litigation against HUD; it did not mention Baker at all. Nor did the City's letter mention "prospective" litigation. Although the bracketed words may convey what the City meant to say, the Attorney General was required to make a determination about whether the City could withhold the Information from public disclosure based on the words that the City actually chose to use in its January 25 Letter.

The City's Original Petition, its live pleading when summary judgment was

granted, asserted simply that "some" of the requested information was excepted from disclosure under Section 552.103, without mentioning Baker or otherwise specifying the facts upon which the allegation was based. Nor did the City disclose potential litigation with Baker as a legal theory in its required Rule 194.2 disclosures—the City wrote that it "reasserts the arguments and conclusions made in the letter to the Attorney General dated January 25, 2023." Accordingly, Dallas Morning News argued that it was entitled to summary judgment because the Information had been provided to HUD—the only litigant identified in the January 25 Letter.

The record reflects that the City first mentioned Baker and his status as a potential litigant in the City's response to Dallas Morning News's summary judgment motion, more than a year after the City sent its January 25 Letter to the Attorney General requesting a decision on whether it could withhold the Information. Accordingly, we agree with Dallas Morning News that the City did not alert the Attorney General to the potential for litigation with Baker in January 25 Letter. Nor did the City inform the Attorney General whether Baker was represented by Counsel or whether the Information had also been disclosed to him. Thus, the Attorney General's Office determined that the litigation exception did not apply because "HUD, the party with whom the City anticipates litigation, received all of the information at issue."

The City's statement in its January 25 Letter that the information at issue "is of the kind that would be properly sought in discovery during litigation and has not been obtained by the opposing party to the litigation" was not adequate to inform the Attorney General about the potential for litigation with Baker. The only litigation that the City mentioned was the ongoing litigation with HUD. The City did not mention Baker, the potential for litigation involving him, or whether Baker was represented by an attorney. The Attorney General's decision contains no analysis of

13

whether the City could withhold the information based on the potential for litigation for Baker because the City did not argue for such an exception before the Attorney General.

## 2. *Statutory Construction*

The question then becomes whether the City could defeat Dallas Morning News's traditional summary judgment motion by presenting evidence that the litigation exception applied for a reason never previously articulated to the Attorney General: that Baker was the prospective plaintiff in any lawsuit resulting from HUD's investigation, and the City had never produced the information at issue to Baker. The City argues that nothing in the PIA prevented it from relying on new evidence pertaining to Baker to defeat the summary judgment motion. Dallas Morning News disagrees, arguing that the City failed to "properly raise[]" this argument before the Attorney General, so Texas Government Code Section 552.326(a) barred the trial court from considering it.

Under the litigation exception, public information is excepted from disclosure if "it is information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party to . . . ." Tex. Gov't Code § 552.103(a). For information to be withheld, the City had to demonstrate to the Attorney General that the (1) litigation involving the City was pending or reasonably anticipated, and (2) the Information relates to that litigation. *See Univ. of Tex. L. Sch. v. Tex. Legal Found.*, 958 S.W.2d 479, 481 (Tex. App.—Austin 1997, no pet.).

However, public information voluntarily disclosed to one party cannot be withheld from another. Tex. Gov't Code § 552.007. And the litigation exception is a permissive exception—meaning that the right to assert it can be waived if not properly asserted when seeking the Attorney General's determination on disclosure. *See* Tex. Gov't Code § 552.326(a). We therefore construe the PIA to determine

14

whether the City's compliance with Section 552.326(a) is required and whether the City has so complied.

The PIA requires procedural compliance by government bodies seeking to withhold relevant information from public disclosure. Section 552.326 establishes that the failure to "properly raise[]" the litigation exception to the Attorney General results in its waiver before the trial court and before us:

> [T]he *only* exceptions to required disclosure within Subchapter C that a governmental body may raise in a suit filed under this chapter are exceptions that the governmental body *properly raised* before the attorney general in connection with its request for a decision regarding the matter under Subchapter G.

*Id.* § 552.326 (emphasis added). Forfeiture by failure to follow procedure is reinforced by other provisions of the PIA. Section 552.301 states, in relevant part, as follows:

> A governmental body must release the requested information and is *prohibited* from asking for a decision from the attorney general about whether information requested under this chapter is within an exception under subchapter C if:
>
> (1)  the governmental body has *previously requested and received a determination* from the attorney general *concerning the precise information* at issue in a pending request; and
>
> (2)  the attorney general or a court determined that the information is public information under this chapter that is not excepted by Subchapter C.

Tex. Gov't Code § 552.301(f) (emphasis added). Accordingly, we agree with Dallas Morning News that the plain text of Section 552.326 limited the trial court to considering only statutory exceptions that were "properly raised" before the Attorney General.

The City argues that Section 552.326(a) did not require the City to mention

15

Baker or his status as a potential litigant in its January 25 Letter in order to later argue this point in court. The City contends that it was only required to name the litigation exception in that Letter—and it did so. Dallas Morning News responds that the City could not "properly raise" the litigation exception without giving the Attorney General enough factual information about Baker to determine whether his status as a potential party constituted a basis for finding the litigation exception to be applicable.

We agree with Dallas Morning News. We construe statutes as a whole, endeavoring "to interpret each word, phrase, and clause in a manner that gives meaning to them all." *Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 513 S.W.3d 487, 493 (Tex. 2017); *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015); *see Abrams v. Jones*, 35 S.W.3d 620, 625 (Tex. 2000) (reasoning that court "must attempt to give effect to every word and phrase if it is reasonable to do so"). The City's argument that it need only name the exception reads the word "properly" out of the statute. It is not enough for the City to "raise[]" the litigation exception in its January 25 Letter just by naming it. The City was required to raise that exception "properly."

Interpreting Section 552.326(a) in light of the broader statutory context, we hold that an exception is "properly raised" for purposes of satisfying Section 552.326(a)'s prerequisite to suit when the governmental body seeking to withhold the information supplies the Attorney General with enough factual detail to make an informed decision about whether an asserted exception actually applies.

Section 552.301 gives context to the requirement of raising an exception "properly" before the Attorney General. Section 552.301(a) makes Attorney General review a mandatory prerequisite to litigating whether a governmental body may withhold Information under any exception in subchapter C. Section 552.301(a) states

16

that "a governmental body that receives a written request for information that it wishes to withhold from public disclosure that it considers to be within one of the exceptions under Subchapter C"—which includes the litigation exception—"must ask for a decision from the Attorney General about whether the information is within that exception if there has not been a previous determination about whether the information falls within one of the exceptions." Tex. Gov't Code § 552.301(a).

Section 552.301(e) then requires the governmental body to submit "written comments stating the *reasons why* the stated exceptions apply that would allow the information to be withheld," and to "label . . . the specific information, or of the representative samples, to indicate which exceptions apply to which parts of the copy." Tex. Gov't Code § 522.301(e)(1)(A), –.(e)(2) (emphasis added). Read together, these requirements ensure that the Attorney General knows not only "what" information the governmental body seeks to withhold from disclosure, but also "why" that information can be legitimately withheld under a Subchapter C exception.

Applying the law to the undisputed facts of the case, we hold that the City failed to give the Attorney General enough factual information to make an informed decision about whether the Information could be withheld pursuant to the litigation exception. "As a general rule, the Public Information Act requires a governmental body to raise and argue any applicable disclosure exception to the Attorney General as a prerequisite to judicial review." *Boeing Co. v. Paxton*, 466 S.W.3d 831, 837 (Tex. 2015).

Here, the City did not argue Baker's status as a potential litigant as a basis for applying that exception. Specifically, the City failed to supply the Attorney General with any information that would support the continued application of the litigation exception to the Information at issue, given the fact that the City had already supplied

17

the request information to HUD—the only actual litigant mentioned in the January 25 Letter. Subsection 552.301(e) makes clear that it was the City's burden to provide and identify the information it sought to withhold, and to provide its reasons for contending it was excepted from disclosure. Subsection 552.301(f) gives the City one shot to make its case to the Attorney General; it expressly prohibits the City from seeking a second opinion on the same information. The City had the opportunity to argue to the Attorney General that the information should be withheld based on the potential for litigation with Baker, but the City did not do so.

The Attorney General's decision letter reveals why having information about Baker would have been significant to the Attorney General's decision. The decision letter explained that "[w]hether litigation is reasonably anticipated must be determined on a case-by-case basis," so "a governmental body must provide this office with 'concrete evidence showing that litigation may ensue is more than mere conjecture.'" (quoting Tex. Att'y Gen. OR1986-452, at 4). This determination turns on distinctions including the presence of an attorney and what steps, if any, the attorney has taken. For example, the decision letter explained that such "concrete evidence" could include the "governmental body's receipt of a letter containing a specific threat to sue the governmental body from an attorney for a potential opposing party." *See* Tex. Att'y Gen. OR1990-55.

In a previous letter ruling, the Attorney General had determined that the mere fact that a potential party has hired an attorney who makes a request for information did not establish that litigation is reasonably anticipated. *See* Tex. Att'y Gen. OR1983-361. The City's January 25 Letter did not mention Baker's status as a potential litigant. Nor did the City explain whether Baker was represented by counsel, what steps his counsel had taken in pursuit of any litigation, or whether Baker had already received the Information that HUD had obtained from the City.

18

Accordingly, the City waived the opportunity to assert the City's discovery interest in the Information with respect to Baker as a basis for denying Dallas Morning News's summary judgment motion.

The City contends that Dallas Morning News's waiver argument is foreclosed pursuant to *Cornyn v. City of Garland*, 994 S.W.2d 258 (Tex. App.—Austin 1999, no pet.). In *Cornyn*, which also involved Dallas Morning News, the Third Court of Appeals held that the city of Garland was not estopped from asserting grounds in the trial court that it had not raised to the Attorney General. *Id.* at 263. *Cornyn* followed an earlier opinion—also invoked by the City—which had held that the PIA (then called the Texas Open Records Act) "makes no provision for waiver or estoppel" regarding arguments that the government body failed to present to the Attorney General. *See City of San Antonio v. Tex. Att'y Gen.*, 851 S.W.2d 946, 950 (Tex. App.—Austin 1993, writ denied) ("Seeking an attorney general's opinion is not a prerequisite to mandamus relief under the Act—resort to that officer is merely permissive if the public entity wishes that officer's opinion."). As of May 20, 1999, the date *Cornyn* issued, the "legislature ha[d] not dictated any" limitation upon the trial court's jurisdiction, so "[n]othing in TPIA purport[ed] to limit or prescribe . . . the issues of fact or law that may be decided, or the kind of declaratory relief that may be granted by the court and on what grounds." *Cornyn*, 994 S.W.2d at 263–64.

Just four months after *Cornyn* issued, the Legislature did in fact impose exactly the kinds of limitations to what issues could be "properly raised" in a suit against the Attorney General. *See* Act of Sep. 1, 1999, 76th Leg., R.S., ch. 1319, § 31, 1999 Tex. Gen. Laws 4500, 4513 (codified at Tex. Gov't Code § 552.326). With the enactment of Section 552.326, the Legislature clearly limited the grounds governmental bodies like the City could raise in a suit challenging an Attorney General's determination to those it had properly raised in its request for a

19

determination. *See* Tex. Gov't Code § 552.326.

We agree with Dallas Morning News that the holding in *Cornyn* has been superseded by the legislative addition of Section 552.326. Allowing the City to raise—for the first time in trial court—a ground that it failed to raise to the Attorney General would defeat the Legislature's purpose in amending the statute to require that the withholding entity not only raise, but "properly raise" any Subchapter C exception that it wants to invoke in court. This burden was not onerous, given that the City was aware of Baker's identity as the HUD complainant but wholly failed to assert it as a ground for withholding the Information until the City sought to avoid summary judgment in the trial court. Accordingly, the City has not satisfied the "prerequisite to judicial review" of raising and arguing the litigation exception to the Attorney General. *See Boeing Co.*, 466 S.W.3d at 837.

**B.    The Trial Court Properly Granted Dallas Morning News's Traditional Summary Judgment Motion and Denied the City's Cross-motion.**

When the PIA is properly construed, we find no error in the trial court's grant of summary judgment for Dallas Morning News.

In support of its motion for summary judgment, Dallas Morning News submitted the City's discovery responses; its request to the Attorney General; and the Attorney General's response. The Attorney General's ruling establishes that the City sought its determination on whether the Information was excepted from disclosure, and that the Attorney General determined that the Information could not be withheld pursuant to the litigation exception because the City had already disclosed the Information to HUD. The City's discovery responses establish that it still had not disclosed all the Information to Dallas Morning News. Taken together, this evidence conclusively establishes that the Dallas Morning News met its burden to show that the City failed to disclose public information that the Attorney General

20

had determined could not be withheld.[3]

The City argues that Dallas Morning News failed to carry its burden because it did not seek summary judgment on the grounds that the City's anticipation of litigation with Baker was unreasonable. Rather, the City contends that Dallas Morning News "sought summary judgment solely upon the ground that the City's discovery interest has purportedly expired," and that it should have instead sought summary judgment "on the ground that the City's anticipated litigation with Baker was unreasonable."

Dallas Morning News was not required to assert any such ground to prevail on its traditional motion for summary judgment. *See* Tex. Gov't Code § 552.321(a) ("A requestor . . . may file suit . . . if the governmental body . . . refuses to supply . . . information that the attorney general has determined is public information that is not excepted from disclosure under subchapter C."). Dallas Morning News was required to demonstrate its entitlement to judgment based on what was properly before the Court; it was not required to defeat potentially applicable disclosure exceptions that the City did not "raise and argue" to the Attorney General. *Boeing Co.,* 446 S.W.3d at 837 (Tex. 2015); *see* Tex. Gov't Code § 552.326(a) (governmental body may only assert in litigation those exceptions which were "properly raised before the attorney general in connection with its request for a decision regarding the matter"). Accordingly, we overrule the City's first and second

---

[3] Dallas Morning News also argued in its summary judgment motion's introduction that "there is no evidence that the requested records are exempt from public disclosure." The City argues that this single sentence was not enough to assert a no-evidence summary judgment motion. *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 696 (Tex. 2017) (holding that a no-evidence motion was insufficient that listed elements of the plaintiff's claim then did not clearly identify which elements, whether some or all, were challenged). Because we resolve this appeal on traditional summary judgment grounds, we do not reach the question of whether Dallas Morning News adequately asserted a no-evidence motion.

issues and affirm the trial court's grant of Dallas Morning News's summary judgment motion.[4]

In its third and fourth issues, the City argues that the trial court erred in denying the City's request for summary judgment because the City conclusively established that the information at issue is excepted from required disclosure under the PIA's litigation exception. In its motion and its brief to this Court, the City does not argue the litigation exception theory that it actually presented to the Attorney General in its January 25 Letter—that the exception applies because the City is undertaking pending litigation with HUD.

Rather, the City asserts that the exception applies based on hypothetical litigation with Baker—a factual theory and argument that appears nowhere in the January 25 Letter. Because the City has not "properly raised" this exception to disclosure, the trial court did not err in denying the City's summary judgment motion. *See* Tex. Gov't Code § 552.326(a). We overrule the City's third and fourth issues.

## C.    Dallas Morning News Is Entitled to Attorney Fees and Costs.

In its sixth and final issue, the City contends that the trial court had no discretion to award Dallas Morning News attorney fees.

The PIA directs that the trial court "shall assess costs of litigation and reasonable attorney fees incurred" by Dallas Morning News in its suit for writ of mandamus against the City, unless the court finds that the City, in withholding the Information, "acted in reasonable reliance" on:

---

[4] Because we hold that the trial court did not err in denying the City's motion for summary judgment based on waiver, we need not reach the City's fifth issue—whether the trial court erred in sustaining the Dallas Morning News's objections to the City's summary judgment evidence. Accordingly, we overrule the City's fifth issue.

(1) a judgment or an order of a court applicable to the governmental body;

(2) the published opinion of an appellate court; or,

(3) a written decision of the attorney general, including a decision issued under Subchapter G or an opinion issued under [Texas Government Code] Section 402.042.

Tex. Gov't Code § 552.323 (on awarding attorney fees).

We will not reverse an award of attorney fees unless the City shows that the trial court clearly abused its discretion in awarding the fees. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). It is an abuse of discretion for the trial court to "rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence." *Adkisson v. Paxton*, 459 S.W.3d 761, 779 (Tex. App.—Austin 2015, no pet.) (citing *Bocquet*, 972 S.W.2d at 21).

First, the City challenges the award on the basis that the Dallas Morning News did not substantially prevail in its suit for writ of mandamus. The PIA's "substantially prevail" requirement incorporates the concept of a "prevailing party," and thus must be construed in line with the Texas Supreme Court's jurisprudence addressing prevailing-party requirements for recovering attorney fees. *See Tex. State Bd. of Veterinary Med. Exam'r v. Giggleman*, 408 S.W.3d 696, 703 (Tex. App.—Austin 2013, no pet.).

To qualify as a prevailing party, Dallas Morning News had to "obtain actual and meaningful relief, something that materially alters the parties' legal relationship." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652 (Tex. 2009). The record reflects that Dallas Morning News prevailed in the trial court by obtaining relief on its PIA mandamus claim. The City does not dispute that Dallas Morning News prevailed in the trial court, but asserts that this court should reverse the trial court's judgment resulting in a decision that Dallas Morning

News did not substantially prevail. Given our affirmation of the trial court's grant of summary judgment on the Dallas Morning News's claim for writ of mandamus, we conclude that Dallas Morning News substantially prevailed within the meaning of Section 552.323.

Second, the City contends that the trial court had no discretion to award attorney fees because the City relied on "several written Attorney General decisions and published appellate court opinions" in pursuing this litigation. The City refers to four Attorney General opinions and two appellate court cases as its reasonable legal bases. The Attorney General opinions do not lend any support to the City's position that it could assert a new basis in this suit that it did not raise and argue before the Attorney General in its initial request. *See B.W.B. v. Eanes Indep. Sch. Dist.*, No. 03-15-00710-CV, 2018 WL 454783 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op.); *see also City of Garland*, 994 S.W.2d 258; *and* Tex. Att'y Gen. ORD-270 (1981); Tex. Att'y Gen. ORD-336 (1982); Tex. Att'y Gen. ORD-454 (1984); Tex. Att'y Gen. ORD-579 (1990). Notably, they evaluate prior versions of the statute that did not include Section 552.326(a)'s requirement that Subchapter C exceptions be "properly raised" before the Attorney General. *See* Tex. Gov't Code § 552.326 (added by Act of June 18, 1999, 76th Leg., R.S., ch. 1319, § 31, 1999 Gen. Laws 4500, 4513) ("[T]he only exceptions to required disclosure within Subchapter C that a governmental body may raise in a suit filed under this chapter are exceptions the governmental body properly raised before the attorney general . . . .").

Having found no support in the City's cited authority for its position that it could assert a new theory for the first time in this litigation that it failed to raise before the Attorney General, we hold that the trial court could have reasonably determined that the City had no reasonable bases in law for withholding the

Information. On this record, we do not find that the trial court acted "arbitrarily, unreasonably, or without regard to guiding legal principle, or to rule without supporting evidence" in awarding the Dallas Morning News attorney fees. *Adkisson*, 459 S.W.3d at 779 (citing *Bocquet*, 972 S.W.2d at 21). We overrule the City's sixth issue and affirm the court's award.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.


<u>/s/ April Farris</u>
April Farris
Justice


Before Chief Justice Brister and Justices Field and Farris (Brister, C.J., concurring).

25